**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
Office of the Clerk
Byron White United States Courthouse
Denver, Colorado 80257
(303) 844-3157

Patrick J. Fisher, Jr.
 Clerk of Court

Elisabeth A. Shumaker
Chief Deputy Clerk

February 25, 2000


TO:     ALL RECIPIENTS OF THE CAPTIONED OPINION

RE:     No. 97-2099; Migneault v. Peck, et al.
        D.C.  No. CIV-96-385-JC

        The court's Opinion on Remand was filed and judgment entered today in the captioned case.  A copy of the opinion is enclosed.

        This court issued a written, signed opinion on October 23, 1998.  A petition for writ of certiorari was filed in the Supreme Court on January 27, 1999.   The Supreme Court opinion, which was filed January 18, 2000, ordered judgment vacated with costs and remanded for further consideration.

        The Opinion on Remand directs the mandate to issue forthwith.  The district court shall acknowledge receipt of this mandate by file stamping and returning the enclosed copy of this letter.  Any original record will be returned to you at a later date.

                          Sincerely,

                          Patrick J. Fisher, Jr.
                          Clerk of Court


                          By:
                              Nicole Allison
                              Deputy Clerk


Enclosure

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOANNE B. MIGNEAULT,

     Plaintiff-Appellee,

v.

RICHARD PECK, President; DAVID L. McKINNEY,
Vice President for Business and Finance; PAUL ROTH,
M.D., Dean of the School of Medicine; ROMEO ORTIZ,
Director of Human Resources,

     Defendants,

and

UNIVERSITY OF NEW MEXICO; JANE E. HENNEY,
M.D., Vice President for Health Sciences,

     Defendants-Appellants,

-------------------

UNITED STATES OF AMERICA,

     Intervenor,

AMERICAN ASSOCIATION OF RETIRED PERSONS,

     Amicus Curiae.

No. 97-2099

---

**OPINION ON REMAND**

---

Donna L. Dagnall, Albuquerque, New Mexico, for Plaintiff-Appellee.

Paula I. Forney of Law Offices, Santa Fe, New Mexico, for Defendants-Appellants.

Seth M. Galanter (Jessica Dunsay Silver with him on the brief), Department of Justice, Washington, D.C., for the Intervenor.

Cathy Ventrell-Monsees and Laurie A. McCann of American Association of Retired Persons, Washington, D.C., on the brief for Amicus Curiae.

---

Before **BRORBY**, **McKAY,** and **PORFILIO**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

In *Migneault v. Peck*, 158 F.3d 1131, 1139 (10th Cir. 1998), we concluded the district court correctly denied Eleventh Amendment immunity to the University of New Mexico ("University") against Ms. Migneault's Age Discrimination in Employment Act ("ADEA") claim. In so holding, we followed Tenth Circuit precedent established in *Hurd v. Pittsburg State University*, 109 F.3d 1540, 1546 (10th Cir. 1997), that "Congress validly abrogated Eleventh Amendment immunity by exercising its authority under the Fourteenth Amendment to enact the ADEA and by indicating its intent to abrogate." *Migneault*, 158 F.3d at 1136. Although we acknowledged a split in the circuits on the issue of whether the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997) superseded our holding in *Hurd*, we joined the majority of

other circuits that had addressed the issue and held that *City of Boerne* did not alter our prior decision "that Congress acted within its authority under the Fourteenth Amendment to abrogate Eleventh Amendment immunity from suits under the ADEA." *Migneault*, 158 F.3d at 1139. The Supreme Court, in a plurality opinion, has now resolved the split in the circuits, holding that while "the ADEA does contain a clear statement of Congress' intent to abrogate the States' immunity, ... the abrogation exceeded Congress' authority under § 5 of the Fourteenth Amendment." *Kimel v. Florida Board of Regents*, 528 U.S. ___, ___, 120 S. Ct. 631, 634 (2000). Accordingly, the Supreme Court vacated our decision in *Migneault*, *University of New Mexico Bd. of Regents v. Migneault*, ___ U.S. ___, 2000 WL 29245 (Jan. 18, 2000), and remanded for further consideration in light of *Kimel*.

Having carefully considered Ms. Migneault's ADEA claim in light of *Kimel v. Florida Board of Regents*,[1] we conclude she cannot maintain her suit against the University, a state employer. We therefore **REVERSE** the district

_____

[1] We note *Kimel* involved only the issue of whether Congress validly abrogated the States' Eleventh Amendment immunity under the ADEA. It did not address that portion of our *Migneault* opinion dealing with Ms. Migneault's 42 U.S.C. § 1983 claim against Dr. Jane Henney. Accordingly, we reaffirm our holding that Ms. Migneault does not have a cognizable age discrimination claim under the Equal Protection Clause, independent of the ADEA.

court's denial of Eleventh Amendment immunity to the University and remand for further proceedings consistent with the opinion of the United States Supreme Court.

The mandate shall issue forthwith.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

JOANNE B. MIGNEAULT,

    Plaintiff-Appellee,

v.

RICHARD PECK, President; DAVID L. McKINNEY,
Vice President for Business and Finance; PAUL ROTH,
M.D., Dean of the School of Medicine; ROMEO ORTIZ,
Director of Human Resources,

    Defendants,

and

UNIVERSITY OF NEW MEXICO; JANE E. HENNEY,
M.D., Vice President for Health Sciences,

    Defendants-Appellants,

-------------------

UNITED STATES OF AMERICA,

    Intervenor,

AMERICAN ASSOCIATION OF RETIRED PERSONS,

    Amicus Curiae.

No. 97-2099

_____

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-96-385-JC)

Donna L. Dagnall, Albuquerque, New Mexico, for Plaintiff-Appellee.

Paula I. Forney of Law Offices, Santa Fe, New Mexico, for Defendants-Appellants.

Seth M. Galanter (Jessica Dunsay Silver with him on the brief), Department of Justice, Washington, D.C., for the Intervenor.

Cathy Ventrell-Monsees and Laurie A. McCann of American Association of Retired Persons, Washington, D.C., on the brief for Amicus Curiae.

---

Before **PORFILIO, McKAY** and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Plaintiff Joanne Migneault brought this action against the University of New Mexico ("the University"), its Board, and several of its employees under 42 U.S.C. § 1983 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. She alleged, *inter alia*, the defendants failed to hire her for an employment position due to age discrimination in violation of the ADEA and the Equal Protection Clause of the Fourteenth Amendment. This appeal arises out of the district court's interlocutory order denying (1) Eleventh Amendment immunity to defendant University from Ms. Migneault's ADEA claim, and (2) qualified immunity to defendant Dr. Jane Henney from Ms. Migneault's § 1983 claim alleging a violation of her equal protection rights. The University and Dr. Henney appeal the district court's denial of the defendants' motions to dismiss

-2-

and for summary judgment on these issues. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## BACKGROUND

Ms. Migneault was an employee of the University, a state institution, from March 1982 through December 1994. She was placed on lay-off status in March 1994 and laid off in June 1994, after the University decided to eliminate her position as Assistant to the Director of the Center for Non-Invasive Diagnosis. The University, however, permitted her to work through December 1994. During the time period at issue, she was married to Robert L. Migneault, the Dean of Library Sciences at the University. She was over forty years old at all relevant times.

In March 1994, Ms. Migneault applied for the position of Executive Secretary to the Vice President for Health Sciences at the University. The position was two grades lower on the University personnel scale than her position at the Center for Non-Invasive Diagnosis and paid roughly $10,000 less than her salary at that time. Dr. Henney, the Vice President of Health Sciences, interviewed four finalist candidates for the Executive Secretary position, including Ms. Migneault. Three of the four candidates were over the age of forty.

Dr. Henney ultimately hired Ms. Rose Johnson, who was under forty years old.

Ms. Migneault was told she was not offered the job because she was overqualified

and because there was a feeling she would not be happy in the position. Ms.

Migneault alleges these reasons were pretextual for age discrimination.[1]

On March 28, 1995, Ms. Migneault filed an age discrimination charge

under the ADEA with the Equal Employment Opportunity Commission. After the

requisite sixty days elapsed with no EEOC action, Ms. Migneault filed this

lawsuit claiming the defendants: (1) violated the ADEA by terminating her

position and not hiring her for the Executive Secretary position or for another

position (Administrator Coordinator III) because of her age; (2) violated the First

Amendment by refusing to consider her for an appropriate position at the

University because of her affiliation and support for the Center for Non-Invasive

Diagnosis and her marriage to a Dean on campus; (3) violated the Equal

Protection Clause by violating her First Amendment rights and the ADEA; (4)

violated her procedural and substantive due process rights as guaranteed by the

Fifth and Fourteenth Amendments by violating the University's Business Policy

---

[1] She claims the reasons were pretextual because: she was a better qualified candidate than Ms. Johnson; contrary to Dr. Henney's assertion, she never stated during her interview that she could just do secretarial work; and she alleges Dr. Henney asked her during her interview why she would want to retire in the position.

Provisions; and (5) retaliated against her for filing a charge with the Equal Employment Opportunity Commission by failing to return her from layoff status.

On June 13, 1996, the defendants moved to dismiss Ms. Migneault's claims. The defendants subsequently moved for summary judgment on December 2, 1996. The district court ruled on both motions together, granting them in part and denying them in part. The district court's order dismissed all Ms. Migneault's claims except for her ADEA claim against the University and her equal protection claim under § 1983 against Dr. Henney.[2]

In its motion to dismiss, the University claimed Ms. Migneault's ADEA suit was barred by Eleventh Amendment immunity. It claimed Congress did not validly abrogate states' Eleventh Amendment immunity since the ADEA was not enacted pursuant to the Fourteenth Amendment under which Congress derives its sole constitutional authority to abrogate.

---

[2] The district court also ruled on the defendant's motion to strike the plaintiff's affidavit which is not at issue in this appeal.

The University further claimed Congress could not have enacted the ADEA pursuant to its powers under the Fourteenth Amendment because age is not a suspect class. The district court rejected both arguments, relying on *Hurd v. Pittsburgh State Univ.*, 29 F.3d 564 (10th Cir.), *cert. denied*, 513 U.S. 930 (1994), where this court specifically held the ADEA, as amended, was enacted pursuant to Congress' legislative power under § 5 of the Fourteenth Amendment. The court thus denied the University's motion to dismiss on Eleventh Amendment grounds.

In the defendants' summary judgment motion, Dr. Henney argued she was immune from Ms. Migneault's equal protection claim under the doctrine of qualified immunity. She claimed she was entitled to the immunity because Ms. Migneault failed to show Dr. Henney's actions violated clearly established law. The district court rejected Dr. Henney's argument, ruling she was not entitled to qualified immunity. In doing so, the court found Ms. Migneault's complaint stated an equal protection violation and the illegality of age discrimination was clearly established such that a reasonable person in Dr. Henney's position would have understood her conduct violated the Equal Protection Clause. Consequently, the district court denied Dr. Henney's motion for summary judgment on this issue.

**ANALYSIS**

*Eleventh Amendment Immunity*

We review *de novo* the district court's denial of a motion to dismiss for lack of subject matter jurisdiction, *see Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 944 (10th Cir. 1995), and the claim that a suit is barred by the Eleventh Amendment. *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir. 1995).

The Eleventh Amendment to the United States Constitution restricts federal jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its language the Eleventh Amendment might appear to apply only to cases against states relying on federal diversity jurisdiction, the Supreme Court has long interpreted it to extend to suits arising under the federal constitution or federal law. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (*citing Hans v. Louisiana*, 134 U.S. 1, 11-14 (1890)).

Eleventh Amendment immunity is not absolute. A state may consent to be sued in federal court, or Congress may abrogate sovereign immunity. *See*

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). To abrogate Eleventh Amendment immunity, Congress must have "'unequivocally expresse[d] its intent to abrogate the immunity,'" and "acted 'pursuant to a valid exercise of power.'" *Seminole Tribe*, 517 U.S. at 55 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)) (alteration in original). After the Court's ruling in *Seminole Tribe*, it is clear Congress may only abrogate Eleventh Amendment immunity when it acts pursuant to its legislative authority under § 5 of the Fourteenth Amendment. *Id.* at 59, 65-66.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute excludes from its coverage age discrimination that is reasonably necessary to satisfy bona fide occupational qualifications or is based on reasonable factors other than age. *Id.* § 623(f). An employer violating the ADEA may be liable for legal and equitable relief. *Id.* § 626(b), (c). The 1974 amendments to the ADEA added to the definition of employer, a State, its political subdivisions, agencies or instrumentalities. Pub. L. 93-259, § 28(a)(1)-(4), Apr. 8, 1974, 88 Stat. 55 (codified as 29 U.S.C. § 630(b)). The parties do not dispute the University is an

employer under the ADEA.

The University claims the ADEA did not validly abrogate Eleventh Amendment immunity as it was enacted pursuant to the Commere Clause rather than the Fourteenth Amendment, and does not contain an unequivocal intent to abrogate. In the alternative, the University argues the ADEA exceeds Congress' power to legislate under § 5 of the Fourteenth Amendment.

We can summarily dispose of the bulk of the University's argument since we have already ruled on this precise issue. In *Hurd v. Pittsburg State University*, 109 F.3d 1540, 1546 (10th Cir. 1997), this court unequivocally held Congress validly abrogated Eleventh Amendment immunity by exercising its authority under the Fourteenth Amendment to enact the ADEA and by indicating its intent to abrogate. As another panel of this circuit has already decided this issue, we cannot address the University's claim absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court.[3] *Finley v. United States*, 82

---

[3] Even if we could revisit *Hurd*, our conclusion the ADEA amendment was enacted under the Fourteenth Amendment would remain unchanged. The *Hurd* case involved two opinions of this court addressing whether lawsuits against states under ADEA were barred by Eleventh Amendment immunity. *See Hurd v. Pittsburg State Univ.*, 29 F.3d 564 (10th Cir. 1994) (*Hurd I*); *Hurd v. Pittsburg State Univ.*, 109 F.3d 1540 (10th Cir. 1997) (*Hurd II*). In *Hurd I*, a pre-*Seminole Tribe* opinion, we concluded Congress intended to abrogate that immunity when it passed the ADEA, but we did not address under which authority Congress acted, *i.e.*, the Commerce Clause or the Fourteenth Amendment. 29 F.3d at 564. *Hurd*

-9-

F.3d 966, 974 (10th Cir. 1996) ("[A]n overruling of prior Tenth Circuit precedent

... lies beyond the power of this tribunal."); *In re Smith*, 10 F.3d 723, 724 (10th

Cir. 1993) ("We are bound by the precedent of prior panels absent *en banc*

reconsideration or a superseding contrary decision by the Supreme Court."), *cert.*

*denied*, 513 U.S. 807 (1994).

        The University claims *City of Boerne v. Flores*, ___ U.S. ___, 117 S. Ct.

2157 (1997), is superseding Supreme Court authority for the proposition Congress

---

*II* revisited the *Hurd I* ruling in light of the intervening *Seminole Tribe* decision.
109 F.3d at 1542. In *Hurd II*, we applied the *Seminole Tribe* analysis and
concluded Congress clearly intended to abrogate Eleventh Amendment immunity
when enacting the ADEA. *Id.* at 1543-44. We further held Congress exercised its
power to abrogate under § 5 of the Fourteenth Amendment. *Id.* at 1544-46.
These conclusions were supported by several of our sister circuit court decisions
that reviewed the legislative history to the 1974 ADEA amendments in detail. *Id.*
at 1545-46 (citing, *inter alia*, *Davidson v. Board of Governors*, 920 F.2d 441, 443
(7th Cir. 1990); *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 699-700 (1st
Cir. 1983); *Arritt v. Grisell*, 567 F.2d 1267, 1270-71 (4th Cir. 1977)).

        Furthermore, contrary to the University's claim, post-*Seminole Tribe*
decisions at the federal circuit level support, rather than question, the *Hurd II*
decision. *See Coger v. Board of Regents*, 154 F.3d 296 (6th Cir. 1998); *Scott v.
University of Miss.*, 148 F.3d 493 (5th Cir. 1998); *Keeton v. University of Nevada
Sys.*, 150 F.3d 1055, 1057 (9th Cir. 1998) ("The legislative history and
development of the ADEA clearly establish that Congress relied upon [§ 5] of the
Fourteenth Amendment in enacting the 1974 ADEA amendments."); *Goshtasby v.
Board of Trustees*, 141 F.3d 761, 768 (7th Cir. 1998) (reaffirming its ruling that
Congress passed the 1974 ADEA amendments pursuant to authority under the
Fourteenth Amendment). *But see Humenansky v. Regents of the Univ. of Minn.*,
152 F.3d 822 (8th Cir. 1998) (holding the ADEA is not a valid exercise of
Congress' enforcement powers under § 5 of the Fourteenth Amendment); *Kimel v.
Board of Regents*, 139 F.3d 1426, 1445-48 (11th Cir. 1998) (Cox, J., dissenting)
(same).

exceeded its authority under § 5 of the Fourteenth Amendment in enacting the ADEA.

In *City of Boerne*, the Court struck down the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.*, on the grounds its enactment exceeded Congress' power to legislate under § 5 of the Fourteenth Amendment.[4] *City of Boerne*, ___ U.S. at ___, 117 S. Ct. at 2169-72. Congress enacted the Religious Freedom Restoration Act in direct response to the Supreme Court's ruling in *Employment Div., Dep't. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). *Id.* at 2160. In *Smith*, the Court held the Free Exercise Clause does not require neutral, generally applicable laws that burden religious practices to be justified by a compelling governmental interest. *Smith*, 494 U.S. at 883-85. To protect religious freedom after *Smith*, the Religious Freedom Restoration Act required all laws, including laws of general applicability, which substantially burden a person's exercise of religion be justified by furthering a compelling governmental interest and be the least restrictive means to further that interest. *City of Boerne,* ___ U.S. at ___, 117 S. Ct. at 2162. The Act applied to all federal, state, and local laws. *Id.* It therefore imposed a demanding standard on a

---

[4] Section 5 states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]." U.S. Const. amend. XIV, § 5.

wide variety of laws which might have no relationship to religious bigotry.

In striking down the Religious Freedom Restoration Act, the Court explained Congress may only enact legislation under § 5 that deters or remedies violations of the Fourteenth Amendment. *Id.* at 2163-64. To qualify as remedial legislation, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 2164. "The appropriateness of remedial measures must be considered in light of the evil presented." *Id.* at 2169. If the legislation at issue imposes burdens far greater than the seriousness of any demonstrated constitutional injury requiring such measures, then the legislation does not remediate the constitutional violation but creates substantive change in constitutional protections. *Id.* at 2163-70.

In *City of Boerne*, the Court recognized Congress had the constitutional authority to enact legislation under § 5 to enforce the Free Exercise Clause. *Id.* at 2163. However, the Court found the Religious Freedom Restoration Act's demanding, compelling interest standard and its broad coverage to all laws, even laws of general applicability, were so out of proportion to any demonstrated pattern or practice of unconstitutional conduct burdening the exercise of religion that the Act could not be remedial. *Id.* at 2171. The legislative record was

devoid of any showing laws were being passed because of religious bigotry that justified the Religious Freedom Restoration Act's extreme measures. *Id.* at 2169. Therefore, the Court held the legislation exceeded Congress' legislative powers under § 5 of the Fourteenth Amendment. *Id.* at 2172.

Applying the *City of Boerne* analysis to evaluate the constitutionality of the ADEA, we conclude the ADEA is within Congress' legislative authority under § 5 of the Fourteenth Amendment. We first observe Congress has the authority under § 5 to legislate against arbitrary age discrimination. Section 5 empowers Congress to enforce the provisions of the Fourteenth Amendment, including the Equal Protection Clause.[5] The Equal Protection Clause protects against arbitrary discrimination by the states. *See Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988) (stating "arbitrary and irrational discrimination violates the Equal Protection Clause under even our most deferential standard of review" in the context of the court's constitutional review of a state statute); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

---

[5] The Equal Protection Clause of the Fourteenth Amendment states: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

direction that all persons similarly situated should be treated alike.'"). More specifically, the Equal Protection Clause protects against arbitrary age discrimination. *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (recognizing arbitrary age discrimination may violate the Equal Protection Clause when the Court applied the rational basis test to a retirement provision of a state constitution setting mandatory retirement for judges at age seventy); *see also Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314 (1976) (*per curiam*) (rational basis test applied to a state law mandating retirement at age fifty).

The fact age is not a suspect or quasi-suspect classification does not mean arbitrary age discrimination is not violative of the Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 446 ("Our refusal to recognize the retarded as a quasi-suspect class does not leave them entirely unprotected from invidious discrimination."); *Goshtasby*, 141 F.3d at 771 ("The Supreme Court's equal protection jurisprudence is not confined to traditional suspect or quasi-suspect classifications."); *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 487 (7th Cir. 1997) (stating "invidious discrimination by governmental agencies ... violates the equal protection clause even if the discrimination is not racial [a suspect class]."). Because arbitrary age discrimination violates the Equal

-14-

Protection Clause of the Fourteenth Amendment, we conclude Congress has the legislative power under § 5 to deter or remedy such discrimination.

We also conclude the ADEA is remedial, as opposed to substantive, in nature. The ADEA's scope is limited to the unconstitutional conduct Congress seeks to prevent. Congressional findings and legislative history indicate arbitrary age discrimination is a real problem in the workplace. In its statement of findings and purpose to the ADEA, Congress found "arbitrary age limits regardless of potential for job performance has become a common practice" and the "incidence of unemployment, especially long-term unemployment ... is, relative to the younger ages, high among older workers." 29 U.S.C. § 621(a)(2), (3). Congress' findings were based on extensive factfinding by the Executive Branch and Congress of age discrimination in employment. *EEOC v. Wyoming*, 460 U.S. 226, 229-233 (1983) (reviewing the legislative history of the ADEA in detail). Both Senate and House committees in passing the 1974 ADEA amendments cited remarks made by the President in 1972 that:

> [d]iscrimination based on age -- what some people call "age-ism" -- can be as great an evil in our society as discrimination based on race or religion or any other characteristic which ignores a person's unique status as an individual and treats him or her as a member of some arbitrarily defined group. Especially in the employment field, discrimination based on age is cruel and self-defeating; it destroys the spirit of those who want to work ....

-15-

S. Rep. No. 93-690 at 55, H.R. Rep. No. 93-913, *reprinted in* 1974 U.S.C.C.A.N. 2811, 2849. Congress recognized age discrimination was occurring in the *public* sector as well. *See Goshtasby*, 141 F.3d at 772 (citing S. Rep. No. 846, 93d Cong., 2d Sess. 112 (1974); Senate Special Comm. on Aging, Improving the Age Discrimination Law, 93d Cong., 1st Sess. 14 (Comm. Print 1973); 118 Cong. Rec. 7,745 (1972) (remarks of Sen. Bentsen)). We recognize the legislative history does not provide specific or detailed evidence of discrimination; however, specific evidence is not required for Congress to legislate under § 5. "Judicial deference, in most cases, is based not on the state of the legislative record Congress compiles but 'on due regard for the decision of the body constitutionally appointed to decide.'" *City of Boerne*, ___ U.S. at ___, 117 S. Ct. at 2170 (quoting *Oregon v. Mitchell*, 400 U.S. 112, 207 (1970) (opinion of Harlan, J.). Giving such deference, we believe the ADEA is adequately supported by congressional findings demonstrating a need to remedy age discrimination.

More important, the means utilized by the ADEA to deter or remedy age discrimination are proportional to the constitutional violations it seeks to prohibit. Rather than having a sweeping coverage as the Religious Freedom Restoration Act, the ADEA is narrowly confined to combat the problem at issue, *arbitrary* age discrimination. Only arbitrary age discrimination is prohibited by the ADEA.

Age discrimination that can be supported by non-arbitrary reasons is not affected.[6] *See* 29 U.S.C. § 623(f). In addition, consistent with congressional findings that age discrimination especially affects older workers, *see id.* § 621(1)-(3), the ADEA limits its coverage to age discrimination for workers who are at least forty but less than seventy years old, *id.* § 631(a). Hence, the ADEA is remedial because its application is proportional to the conduct, arbitrary age discrimination among older workers, that it seeks to prevent. As we conclude the ADEA is remedial, Congress acted within its enforcement powers under § 5 of the Fourteenth Amendment in enacting the ADEA.

We hold, therefore, the *City of Boerne* decision does not alter our prior decision in *Hurd* that Congress acted within its authority under the Fourteenth Amendment to abrogate Eleventh Amendment immunity from suits under the ADEA. We recognize there is a split in the circuits on this issue. However, we join the majority of other appellate courts that have addressed this issue since the *City of Boerne* decision. *See Coger*, 154 F.3d 296; *Scott,* 148 F.3d 493;

---

[6] For example, the ADEA does not make it unlawful for an employer to discriminate against an employee on the basis of age where "age is a bona fide occupational qualification," where differentiation is based on reasonable factors other than age, or where the employee's workplace is in another country and compliance with the ADEA would cause the employer to violate the laws of that country. 29 U.S.C. § 623(f)(1).

*Goshtasby*, 141 F.3d at 769-72; *but see Humenansky*, 152 F.3d 822 (concluding the ADEA exceeds Congress'§ 5 powers as defined in *City of Boerne*); *Kimel*, 139 F.3d at 1445-48 (Cox, J., dissenting). Accordingly, we affirm the district court's denial of Eleventh Amendment immunity to the University.

*Qualified Immunity*

Dr. Henney argues she is immune from Ms. Migneault's equal protection claim under the doctrine of qualified immunity. The doctrine of qualified immunity shields government officials from suit when their conduct does not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine allows courts to expeditiously weed out suits against government officials which fail to establish a violation of a clearly established right prior to imposing the burdens of discovery and litigation. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Therefore, when the district court denies qualified immunity on an issue of law, as in this case,[7] the decision is immediately appealable as a "final decision" under 28

_____

[7] Our 28 U.S.C. § 1291 jurisdiction is appropriately exercised over this interlocutory claim because the district court's decision denying qualified

-18-

U.S.C. § 1291.  *Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir. 1992).

We review district court orders denying qualified immunity on summary judgment *de novo*.  *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).  In our review of summary judgment rulings, the evidence in the record and inferences drawn therefrom, are viewed in the light most favorable to the nonmoving party.  *Id.*  However, we treat summary judgment rulings involving a qualified immunity defense somewhat differently than other summary judgment rulings.  *Id.*

Our review of the district court's ruling denying qualified immunity on summary judgment consists of two inquiries directed toward the plaintiff.  Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred.  *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997).  "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity."  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  To show a right is clearly

---

immunity was based on an issue of law rather than sufficiency of the evidence. The district court denied summary judgment to Dr. Henney on the basis the illegality of age discrimination was clearly established at the time Dr. Henney allegedly discriminated against Ms. Migneault.

-19-

established, Ms. Migneault must cite to Supreme Court or Tenth Circuit decisions on point, or to weight of authority from other courts defining the contours of the right. *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). "The contours of the right [the official is alleged to have violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987.)

Dr. Henney argues Ms. Migneault failed her burden of identifying a clearly established right. Specifically, Dr. Henney claims Ms. Migneault failed to show the law is clearly established that a claim for age discrimination in employment is cognizable under the Equal Protection Clause, independent of the ADEA. We agree.

Neither the Supreme Court nor this court have squarely addressed whether an Equal Protection claim exists independent of an ADEA claim. Other courts have addressed the issue, however, and in doing so, have refused to recognize Equal Protection claims for age discrimination in employment. For numerous, well-founded reasons we need not repeat here, both the Fourth and Fifth Circuits have concluded that age discrimination claims brought under § 1983 are preempted by the ADEA. *See Lafleur v. Texas Dep't of Health*, 126 F.3d 758,

-20-

760 (5th Cir. 1997) (granting qualified immunity from Equal Protection claim for age discrimination because the ADEA provides the sole remedy for age discrimination claims by individuals); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989) (holding the ADEA provides the exclusive judicial remedy for claims of age discrimination). Ms. Migneault cites no contrary authority. [8] We therefore adopt the holding and rationale of *Lafleur v. Texas Dep't of Health* as the law of this circuit, and hold the clearly established law on this issue operates to defeat Ms. Migneault's § 1983 claim against Dr. Henney.

Accordingly, we **AFFIRM** the part of the district court's order denying Eleventh Amendment immunity to the University of New Mexico; we **REVERSE** the part of the district court's order denying qualified immunity to Dr. Henney and **REMAND** with instructions to dismiss Ms. Migneault's § 1983 claim against

---

[8] In support of her § 1983 claim, Ms. Migneault relies on two distinguishable cases – *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71 (1988), and *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). *Bankers Life* and *City of Cleburne* each address the constitutionality of certain state statutes under the Fourteenth Amendment Equal Protection Clause. *See Bankers Life*, 486 U.S. at 80-85 (denying equal protection challenge against Mississippi's "penalty statute," which requires unsuccessful appellants to pay an additional assessment of fifteen per cent of the judgment); *City of Cleburne*. 473 U.S. at 450 (invalidating on equal protection grounds a municipal zoning ordinance that required a special use permit for the operation of a group home for the mentally retarded). Neither case stands for the proposition that Ms. Migneault may bring a § 1983 claim grounded in the Equal Protection Clause where, as here, the ADEA provides a comprehensive statutory scheme to addresses her age discrimination claims.

Dr. Henney for the reasons stated.