**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1321
_____

ANTHONY HILDEBRAND,
Appellant

v.

ALLEGHENY COUNTY, a political entity; ALLEGHENY
COUNTY DISTRICT ATTORNEY'S OFFICE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-12-cv-01122)
District Judge: Honorable Arthur J. Schwab

_____

Argued November 7, 2013

Before:   GREENAWAY, JR., VANASKIE and ROTH,
*Circuit Judges*

(Opinion Filed:  June 27, 2014)

Marjorie E. Crist (Argued)

Crist Law Center, LLC
2500 Lawyers Building
428 Forbes Avenue
Pittsburgh, PA 15219
    *Counsel for Appellant*

Anne N. Occhialino (Argued)
Equal Employment Opportunity Commission
131 M Street NE, 5th Floor
Washington, D.C. 20507
    *Counsel for Amicus Curiae Equal Employment Opportunity Commission*

Andrew F. Szefi
Virginia S. Scott (Argued)
Allegheny County Law Department
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
    *Counsel for Appellee Allegheny County*

Bernard M. Schneider (Argued)
Brucker Schneider & Porter
300 Weyman Road, Suite 320
Pittsburgh, PA 15236
    *Counsel for Appellee Allegheny County District Attorney's Office*

——————

OPINION OF THE COURT

——————

VANASKIE, *Circuit Judge.*

This appeal presents three issues on which we have not previously ruled in a precedential opinion. First, whether an employee terminated from a local government position may maintain an action for age discrimination under 42 U.S.C. § 1983. Second, whether the pleading of exhaustion of administrative remedies, a prerequisite to bringing a lawsuit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, must satisfy the standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And third, whether a complainant's submission of the Equal Employment Opportunity Commission's revised Intake Questionnaire constitutes the filing of a charge of discrimination.

As to the first question, we hold that a state or local government employee may not maintain an age discrimination claim under 42 U.S.C. § 1983, but must instead proceed under the ADEA. As to the second question, we hold that a plaintiff is not obligated to plead exhaustion of administrative remedies with particularity, but may instead allege in general terms that the required administrative process has been completed. And finally, we hold that the EEOC Intake Questionnaire, revised in the wake of *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), when properly completed, constitutes a charge of discrimination.

As a result of our holdings, we will affirm the District Court's dismissal of Appellant Anthony Hildebrand's § 1983 claims but we will vacate the District Court's dismissal of Hildebrand's ADEA claim against the Allegheny County District Attorney's Office as Hildebrand submitted a properly

3

completed Intake Questionnaire to the EEOC within the deadline for filing a charge of discrimination, and Hildebrand adequately pled the exhaustion of administrative remedies. Finally, we will affirm the dismissal of the ADEA claims against Appellee Allegheny County because it was not named on the Intake Questionnaire, and was not identified as a respondent to an age discrimination charge until after the deadline for filing a charge of discrimination against it had passed.

## I. Background

Anthony Hildebrand was employed as a detective for the Allegheny County District Attorney's Office ("DA's Office") for five years before he was terminated on February 18, 2011. Prior to his work at the DA's Office, Hildebrand spent fifteen years as an undercover narcotics detective with the Pittsburgh Police Department.

On February 18, 2011, Hildebrand received a letter suspending him without pay for five days pending discharge, and announcing his termination effective that day. He filed an internal grievance, but the termination was ultimately upheld.

Hildebrand maintains that his termination was part of "a well-known and established practice to push out older workers through termination or forced resignation." (Appellant's Br. 5.) He contends that he became a victim of age-based discrimination beginning in 2009 when he was assigned a new supervisor who, he asserts, demoted him because of his age despite his satisfactory work performance. As part of his demotion, Hildebrand states that he was

4

insulted on the basis of his age and relocated to an inferior workplace. He further alleges that the discrimination he faced was part of a hostile work environment that transcended the conduct of any one employee.

On December 1, 2011, Hildebrand completed an Intake Questionnaire ("the Intake Questionnaire") with the EEOC, indicating that he was the victim of discrimination on the basis of his age. He also checked a box on the Intake Questionnaire authorizing the EEOC to investigate his claim and indicating that he "want[ed] to file a charge of discrimination." (EEOC Br. 3.) Subsequently, on January 11, 2012, Hildebrand completed a "Charge of Discrimination" with the EEOC, naming the Allegheny County District Attorney as the respondent. The EEOC issued a right-to-sue letter on May 7, 2012, and Hildebrand filed suit on August 7, 2012.

Hildebrand's complaint named Allegheny County ("the County"), as well as the DA's Office, as defendants. His complaint asserted violations of the ADEA, Title VII (retaliation), 42 U.S.C. § 1983 (asserting violation of the Equal Protection Clause due to age-based discrimination, as well as violation of his First Amendment free speech rights), the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. §§ 1421-1428, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat §§ 951-963. His complaint also alleged:

> All conditions precedent to jurisdiction under section 706 of Title VII, have occurred or been complied with. Plaintiff filed a claim of employment

5

> discrimination with the [EEOC]. The EEOC issued a Notice of Right to Sue. This Complaint is filed within 90 days of such Notice of Right to Sue.

(A. 2.)

The County and the DA's Office (collectively, "Appellees") separately filed motions to dismiss. On December 7, 2012, the District Court granted the motions to dismiss the Title VII retaliation claim. The District Court also applied the pleading standards set forth in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, to Hildebrand's assertion that he satisfied all conditions precedent to filing suit under the ADEA. Analyzing Hildebrand's complaint in light of the *Iqbal/Twombly* standard, the District Court stated:

> Because [the complaint] fails to provide any facts, *i.e.* specific dates, as to when Plaintiff raised his claim with the EEOC and when the EEOC issued its right to sue letter to Plaintiff, and because Plaintiff failed to attach his Right to Sue to the Complaint, . . . the Complaint falls short of providing the facts to establish whether he has adequately exhausted his administrative remedies.

(A. 112.)  Accordingly, the Court dismissed the ADEA claim without prejudice.  The District Court also dismissed Hildebrand's section 1983 claims without prejudice.

Hildebrand filed an amended complaint, alleging with greater particularity that he satisfied all conditions precedent to filing suit under the ADEA.  Specifically, he averred that he had filed a timely charge of discrimination, the EEOC had issued a right-to-sue letter, and he had filed the complaint within 90 days of notice of the right-to-sue.  He attached his charge of discrimination and the EEOC right-to-sue letter to the amended complaint.

Appellees each filed motions to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that Hildebrand's charge was untimely because it was filed more than 300 days after the last date of discrimination.  Allegheny County also urged the District Court to dismiss Hildebrand's ADEA claim against the County on the additional ground that the charge of discrimination named only the DA's Office as a defendant.

Hildebrand attached to his responses to the motions his completed EEOC Intake Questionnaire.  He contended that the completed Intake Questionnaire constitutes a charge and was filed within 300 days of the last date of discrimination.

On January 4, 2013, the District Court dismissed Hildebrand's amended complaint.  The District Court first dismissed the ADEA claim, concluding that Hildebrand did not file a "charge of discrimination" with the EEOC within the requisite 300 days of the last date of discrimination.

7

Specifically, the District Court found that the last date of alleged discrimination was Hildebrand's February 18, 2011 termination, and that the charge of discrimination filed on January 11, 2012 was therefore untimely. Thus, the District Court concluded that Hildebrand failed to sufficiently plead that he timely filed his claim with the EEOC "in light of the *Iqbal/Twombly* standard." (A. 307.) Finding that further amendment would be futile, the District Court dismissed the ADEA claim with prejudice.

As to his § 1983 claims, the District Court held that Hildebrand failed to state a plausible claim against Allegheny County under a theory of municipal liability, because he did not plead sufficient facts to support a plausible inference that the County had adopted a custom or practice of age discrimination. The District Court also dismissed the § 1983 claims against the DA's Office based on Hildebrand's concession that it was not a separate entity from the County for purposes of § 1983. Finally, having dismissed with prejudice all claims arising under federal law, the District Court declined to exercise supplemental jurisdiction over the remaining claims asserted under the Pennsylvania Whistleblower Law and the Pennsylvania Human Relations Act.

II. Discussion

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a decision granting a motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Accordingly, "[w]e may affirm the district court on any

8

ground supported by the record." *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

A. Hildebrand's § 1983 Age Discrimination Claim

We turn first to Hildebrand's claim brought under § 1983 that Appellees discriminated against him on the basis of his age, in violation of the Equal Protection Clause of the Fourteenth Amendment. Allegheny County argues that the District Court properly dismissed this § 1983 cause of action, contending that "[t]he ADEA 'is the exclusive remedy for claims of age discrimination in employment.'" (Allegheny Cnty. Br. 19 (quoting *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1060-61 (9th Cir. 2009)). For the reasons that follow, we agree.

1.

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress . . . .

Rather than conferring any substantive rights, section 1983 "provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted). "Nevertheless, § 1983 is a statutory remedy and Congress retains the authority to repeal it or replace it with an alternative remedy." *Smith v. Robinson*, 468 U.S. 992, 1012 (1984), superseded by statute, Education of the Handicapped Act, § 615(e)(4) as amended, 20 U.S.C. § 1415(e)(4). Thus, "[s]ection 1983 claims are not available . . . where Congress has evinced an intent to preclude such claims through other legislation." *Ahlmeyer*, 555 F.3d at 1055.

In determining whether a statutory enactment precludes suit under § 1983, "[t]he crucial consideration is what Congress intended." *Smith*, 468 U.S. at 1012. Congressional intent to preclude § 1983 claims may be inferred "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981). In *Sea Clammers*, the Supreme Court held that a plaintiff was precluded from bringing a § 1983 suit for damages under the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 *et seq.* (1976), and the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401 *et seq.* (1976). 453 U.S. at 20-21. Emphasizing the "unusually elaborate enforcement provisions" of the statutory framework, *id.* at 13, the Court concluded that "[a]llowing parallel § 1983 claims to proceed . . . would have thwarted Congress' intent in formulating and

10

detailing these provisions." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253 (2009).

The Supreme Court has also held that § 1983 suits were precluded by statute in a case where a plaintiff sought vindication of a constitutional – rather than a statutory – right. *See Smith*, 468 U.S. 992. In *Smith*, plaintiffs alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, asserting a deprivation of the right to "a free appropriate public education" for their handicapped child. *Id.* at 1009. Focusing once again on the "comprehensive nature of the procedures and guarantees" set forth in the statute's remedial scheme, the Court concluded that Congress did not intend to "leave undisturbed the ability of a handicapped child to go directly to court with an equal protection claim to a free appropriate public education." *Id.* at 1011. Permitting such suits, the Court observed, would "[a]llow[] a plaintiff to circumvent" congressional intent. *Id.* at 1012.

Subsequently, in *Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), the Court again found that a comprehensive remedial statutory framework precluded suit under § 1983. The plaintiff in *Rancho Palos Verdes* filed suit under the Telecommunications Act of 1996 and for damages under § 1983. *Id.* at 115. Applying its prior decisions in *Sea Clammers* and *Smith*, the Court ruled that the Telecommunications Act's remedial scheme would be "distort[ed]" by direct enforcement through § 1983. *Id.* at 127.

Most recently, the Court considered whether Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a),

11

precludes § 1983 claims of sex discrimination in violation of the Equal Protection Clause. *See Fitzgerald*, 555 U.S. at 249. In *Fitzgerald*, the plaintiffs alleged that their daughter, then an elementary school student, suffered several incidents of sexual harassment by another student while on the school bus, and that the school's response to their allegations had been inadequate. *Id.* at 250. The plaintiffs brought suit, asserting that their daughter had suffered sex discrimination in violation of Title IX and the Equal Protection Clause of the Fourteenth Amendment. *Id.* The Court of Appeals for the First Circuit dismissed plaintiffs' constitutional claims, holding that Title IX provided the sole remedy for sex discrimination in the education context. *Id.* at 251. The Supreme Court reversed. *Id.* Reiterating that "the crucial consideration is what Congress intended," *id.* (citation omitted), the Court signaled that its analysis of congressional intent might differ depending upon whether the right asserted under § 1983 arises from a statute or the Constitution:

> In those cases in which the § 1983 claim is based on a statutory right, evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. In cases in which the § 1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of

12

the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional rights.

*Id.* at 252-53 (internal citations and quotation marks omitted).

Notwithstanding the distinction between statutorily-created rights and constitutionally-conferred rights, the Court emphasized that, "[i]n determining whether a subsequent statute precludes enforcement of a federal right under § 1983 . . . *primary emphasis* [is placed] on the nature and extent of that statute's remedial scheme." *Id.* This was true even where plaintiffs, such as those in *Smith*, "relied on § 1983 to assert independent constitutional rights," rather than statutory rights. *Id.* Indeed, the Court observed that in each of the cases where it found a statute to be the exclusive remedy for an asserted right, "the statutes at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit," and "'[a]llowing a plaintiff to circumvent' the statutes' provisions [by suing directly under § 1983] would have been 'inconsistent with Congress' carefully tailored scheme.'" *Id.* at 254-55 (quoting *Smith*, 468 U.S. at 1012).

Turning to the question of whether Title IX precludes suit under § 1983 for sex discrimination, the Court first found that Title IX does not provide a comprehensive enforcement scheme, emphasizing that Title IX's "remedies – withdrawal

13

of federal funds and an implied cause of action – stand in stark contrast to the 'unusually elaborate,' 'carefully tailored,' and 'restrictive' enforcement schemes of the statutes at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*." *Id.* at 255. The Court observed that Title IX does not contain an administrative exhaustion requirement or a notice provision. *Id.* Affording particular weight to Title IX's lack of an express private right of action, the Court noted that it "has never held that an implied right of action had the effect of precluding suit under § 1983." *Id.* Given the absence in Title IX of a detailed remedial scheme, the Court concluded that "parallel and concurrent § 1983 claims will neither circumvent required procedures, nor allow access to new remedies." *Id.* at 255-56. The Court found further support for its conclusion that gender discrimination covered by Title IX could be pursued by way of a § 1983 suit by analyzing "the substantive rights and protections guaranteed under Title IX and under the Equal Protection Clause." *Id.* at 256. The Court found that "Title IX's protections are narrower in some respects and broader in others." *Id.* For instance, Title IX exempts several activities that can be challenged under the Equal Protection Clause, such as discrimination in admissions decisions of elementary and secondary schools, and all activities of military service schools, as well as traditionally single-sex public colleges. *Id.* at 257. Additionally, the Court cited incongruous standards for establishing liability under Title IX and the Equal Protection Clause, explaining that, while "a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded . . . with deliberate indifference," the same plaintiff would be required to show a municipal policy, custom, or practice under § 1983. *Id.* at 257-58. Because of this disparity in coverage, as well

14

as Title IX's lack of a comprehensive enforcement framework, the *Fitzgerald* Court concluded that, in passing Title IX, Congress did not intend to preclude sex discrimination claims in the context of education under § 1983. *Id.* at 258.

2.

Prior to *Fitzgerald*, a number of our sister Courts of Appeals had held that the ADEA precludes § 1983 claims of age discrimination. *See Ahlmeyer*, 555 F.3d at 1057; *Tapia-Tapia v. Potter*, 322 F.3d 742 (1st Cir. 2003); *Migneault v. Peck*, 158 F.3d 1131 (10th Cir. 1998), *vacated on other grounds by Bd. of Regents of Univ. of N.M. v. Migneault*, 528 U.S. 1110 (2000); *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758 (5th Cir. 1997); *Chennareddy v. Bowsher*, 935 F.2d 315 (D.C. Cir. 1991); *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364 (4th Cir. 1989). The Seventh Circuit – the only Court of Appeals to consider this question after *Fitzgerald* – , however, reached the opposite conclusion. *See Levin v. Madigan*, 692 F.3d 607, 622 (2012).

The leading case concluding that the ADEA precludes § 1983 claims of age discrimination is *Zombro v. Baltimore City Police Department*, 868 F.2d 1364. *See Ahlmeyer*, 555 F.3d at 1056. In *Zombro*, the Fourth Circuit held that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination, reasoning that private causes of action brought directly under § 1983 "would severely undermine, if not debilitate, the enforcement mechanism created by Congress under the ADEA." 868 F.2d at 1369. *Zombro* focused on the ADEA's comprehensive statutory scheme, which "was structured to facilitate and encourage

15

compliance through an informal process of conciliation and mediation." *Id.* at 1366. Providing a plaintiff with "direct and immediate access to the federal courts" via § 1983 could result in "the comprehensive administrative process . . . . be[ing] bypassed, and the goal of compliance through mediation . . . . be[ing] discarded." *Id.* Given these concerns, the *Zombro* court reached what it deemed "[t]he inescapable conclusion" that the ADEA precludes suits under § 1983 for age discrimination. *Id.* at 1366-67.

After *Zombro*, the Courts of Appeals for the First, Fifth, Ninth, Tenth, and District of Columbia Circuits agreed. *See Tapia-Tapia*, 322 F.3d at 745; *Lafleur*, 126 F.3d at 760; *Ahlmeyer*, 555 F.3d at 1057; *Migneault*, 158 F.3d at 1140; *Chennareddy,* 935 F.2d at 318. In light of the Supreme Court's decision in *Fitzgerald*, however, the Seventh Circuit diverged from this consensus view, concluding instead that the ADEA does not preclude constitutional claims of age discrimination asserted under § 1983. *Levin*, 692 F.3d at 617.

While recognizing that "the ADEA sets forth a rather comprehensive remedial scheme," *id.* at 618, *Levin* interpreted *Fitzgerald* as setting a higher bar for inferring preclusive intent in cases where a plaintiff alleges a constitutional violation. *Id.* To imply congressional intent to preclude constitutional claims, the *Levin* court held that "some additional indication of congressional intent" is required. *Id.* at 619. Emphasizing that the ADEA lacks express language evincing congressional intent to preclude § 1983 suits, *Levin* considered the statute's purpose. The court reasoned that "the ADEA does not purport to provide a remedy for violation of constitutional rights," but rather, "it provides a mechanism to enforce only the substantive rights

16

created by the ADEA itself." *Id.* at 619 (citing *Zombro*, 868 F.2d at 1373 (Murnaghan, J., concurring in part and dissenting in part)) (internal quotation marks omitted). *Levin* then distinguished the Supreme Court's decision in *Smith*, which found that the Individuals with Disabilities Education Act ("IDEA"), Pub. L. 94-142, precluded suit under § 1983 for a Constitutional violation, explaining that the IDEA was passed to address the *constitutional* requirement to provide a public education for handicapped children. *Id.* at 619. Without express language addressing preclusion, and "absent any additional indication from Congress," the *Levin* Court declined to infer an intent to preclude constitutional claims of discrimination. *Id.* at 620. The court in *Levin* then compared the rights and protections offered by the ADEA and the Equal Protection Clause, and found several significant differences: first, an ADEA plaintiff may sue only an employer, employment agency, or labor organization, whereas a § 1983 plaintiff is free to sue any individual who "caused or participated in the alleged deprivation of the plaintiff's constitutional rights"; second, the ADEA limits claims by certain individuals, such as elected officials, who are not exempted from bringing suit under § 1983; and third, unlike under § 1983, state employees are effectively barred from bringing suit under the ADEA because their employers are shielded by Eleventh Amendment immunity. *Id.* at 621. In light of these differences, and in the absence of express congressional intent to the contrary, the *Levin* court concluded that the ADEA is not the exclusive remedy for age discrimination claims. *Id.* at 621-22.

3.

17

We agree with the *Levin* court that the issue of whether the ADEA precludes a § 1983 cause of action for age discrimination in employment presents a "close call." *Id.* at 617. Contrary to *Levin*, however, we conclude that, on balance, the relevant considerations weigh in favor of finding that the ADEA does indeed bar such § 1983 claims.

The Supreme Court has consistently indicated that the comprehensiveness of a statute's remedial scheme is the primary factor in determining congressional intent. *See Fitzgerald*, 555 U.S. at 253 ("[W]e have placed *primary emphasis* on the nature and extent of [a] statute's remedial scheme.") (emphasis added). *Fitzgerald* reaffirms the Court's jurisprudence on this issue as articulated in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*. *Id.* at 254 (observing that, in each of prior cases, "[o]ffering plaintiffs a direct route to court via § 1983 would have circumvented [the relevant statute's comprehensive] procedures."). Indeed, *Fitzgerald* cited with approval the Court's statement in *Sea Clammers* that, "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, *they may suffice* to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 253 (quoting *Sea Clammers*, 453 U.S. at 20) (emphasis added). To be sure, *Fitzgerald's* analysis of the different substantive protections afforded by Title IX and the Equal Protection Clause provides an additional framework for determining whether a section 1983 cause of action is foreclosed. Nevertheless, we do not believe it disturbed the basic principle that, absent indications to the contrary, we may infer that Congress intended to preclude § 1983 claims when it provides a sufficiently comprehensive remedial scheme for the vindication of a federal constitutional right.

18

Thus, we cannot agree with *Levin* that Congress must provide some "additional indication" of its intent. *Levin*, 692 F.3d at 619. *Fitzgerald* does not suggest the need for a statement of "clear or manifest congressional intent in either the language of the statute or the legislative history," as *Levin* requires. *See Levin*, 692 F.3d at 621. Rather, *Fitzgerald* reaffirmed the principle that, where a statute imposes procedural requirements or provides for administrative remedies, permitting a plaintiff to proceed directly to court via § 1983 would be "inconsistent with Congress' carefully tailored scheme." *Fitzgerald*, 555 U.S. at 255 (quoting *Smith*, 468 U.S. at 1012).

Here, there can be no debate that the ADEA provides a comprehensive remedial scheme. Under the ADEA, it is unlawful for an employer to, among other things, "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA expressly provides a private right of action to employees. *Id.* § 626(c). Before an employee may file suit under the ADEA, however, a plaintiff is required to exhaust administrative remedies by filing a charge of discrimination with the EEOC. *Id.* § 626(d)(1). The EEOC is then directed to notify all respondents named in the employee's charge of discrimination and to "promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." *Id.* § 626(d)(2). Unless the EEOC elects to file suit to enforce the employee's claim, an employee may commence suit sixty days after filing a charge. *Id.* §§ 626(c)(1), (d)(1). In light of these requirements, we agree with the majority of our sister Courts of Appeals that

this scheme would be undermined if plaintiffs could sue directly under § 1983. *See*, *e.g.*, *Zombro*, 868 F.2d at 1366 ("[Under § 1983, the] plaintiff would have direct and immediate access to the federal courts, the comprehensive administrative process would be bypassed, and the goal of compliance through mediation would be discarded.").

Moreover, we do not believe that the rights and protections of the ADEA and the Equal Protection Clause differ in such significant ways as to demonstrate congressional intent to allow parallel § 1983 claims alleging age discrimination. The ADEA is intended to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Under the Equal Protection Clause, age classifications receive only rational basis review. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) ("States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."). By prohibiting "arbitrary age discrimination," the ADEA encompasses the protections afforded by the Fourteenth Amendment, while significantly expanding prohibitions on age discrimination elsewhere.

Although, as the *Levin* court emphasizes, the potential defendants are different under the ADEA and § 1983,[1] we do

---

[1] Under the ADEA, a plaintiff may sue his employer, an employment agency, or a labor organization. 29 U.S.C. § 623. In contrast, a § 1983 plaintiff can sue an individual

not believe this distinction significant enough to demonstrate congressional intent to permit both claims. Additionally, we think the fact that certain government employees are either exempted from the ADEA, or limited to certain remedies, *see* 29 U.S.C. §§ 623(j), 630(f), demonstrates congressional intent to specifically define the rights of those employees rather than to permit such employees to circumvent these limitations by filing directly under § 1983. *See Sea Clammers*, 453 U.S. at 15 ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.").

"We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim." *Smith*, 468 U.S. at 1012. Because we believe, however, that § 1983 suits are "inconsistent with Congress' carefully tailored scheme," *id.*, we join the majority of Courts of Appeals in concluding that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment. Accordingly, we will affirm the District Court's dismissal of Hildebrand's § 1983 claim of age discrimination.

### B. Hildebrand's § 1983 Retaliation Claims

Hildebrand seeks vindication for two additional alleged violations under § 1983, contending that he was retaliated against for his use of the internal grievance process

---

whose actions caused a deprivation of his constitutional rights. *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2011).

21

in violation of the First and Fourteenth Amendments, and that he was retaliated against on the basis of his political patronage in violation of the First Amendment. The District Court dismissed these allegations along with Hildebrand's § 1983 age discrimination claim, finding that he had failed to adequately plead that the County adopted a custom or practice of such discrimination. The District Court also found, albeit in a footnote, that Hildebrand's amended complaint "fail[ed] to pinpoint with any clarity which of his Constitutional rights were negatively impacted by [Allegheny County]," that the allegations of First and Fourteenth Amendment violations were conclusory in nature, and that they therefore "fail[ed] to meet the *Iqbal/Twombly* standard." (A. 313 n.5.) As to the claims of retaliation, we agree with the District Court's analysis.

Hildebrand brought each of these claims against Allegheny County under a theory of municipal liability, which requires him to demonstrate either that the County officially adopted a "policy," or unofficially adopted a "custom," of unconstitutional discrimination. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Hildebrand concededly proceeded on all § 1983 claims under a "custom" theory. "A plaintiff may establish a custom . . . by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotation marks omitted)).

In his amended complaint, Hildebrand made the following averments of retaliation: he alleged that he was

22

retaliated against by the Chief Detective and the Assistant Chief Detective at the DA's Office after he made a good faith report expressing concerns about a fellow detective (A. 136 ¶¶ S-T); that he was similarly retaliated against by the same individuals after reporting a concern about the Office's procedure for charging drug crimes (*Id.* 138 ¶ X); that he was retaliated against by the Assistant Chief Detective after he filed an internal grievance against him alleging age-based harassment (*Id.* 139-40 ¶¶ BB – DD); that he was subsequently demoted in retaliation for his complaints about the drug charging procedures (*Id.* 142 ¶ JJ); and that he was harassed after members of the DA's Office learned that he had previously made political contributions to Joan Orie Melvin in her candidacy for the Pennsylvania Supreme Court (*Id.* 145-46 ¶ WW). Notwithstanding these allegations of retaliation and harassment on the part of certain high-ranking officials at the DA's Office, Hildebrand does not allege that Allegheny County established a custom of retaliating against supporters of Ms. Melvin, or against Hildebrand or other employees who utilized the internal grievance process.

While Hildebrand's brief on appeal reasserts his claim of retaliation, it does not point to any facts demonstrating that there existed a custom in Allegheny County to retaliate against employees on these bases. Rather, the portion of Hildebrand's brief dedicated to discussing his allegations in support of municipal liability relate solely to his claims of age discrimination. We therefore agree with the District Court that Hildebrand failed to set forth a plausible claim for relief against Allegheny County for retaliation, and we will affirm their dismissal on that basis.

C. Hildebrand's ADEA Claims

Having determined that Hildebrand's § 1983 claims were properly dismissed, we now turn to the District Court's dismissal of Hildebrand's ADEA claim.

### 1. Whether the *Iqbal*/*Twombly* Pleading Standards Apply to Fed. R. Civ. P. 9(c)

A plaintiff seeking relief under the ADEA must exhaust his or her administrative remedies as mandated by 29 U.S.C. § 626(d). Section 626(d) requires plaintiffs in "deferral states" such as Pennsylvania, which have a state agency with authority to investigate claims of employment discrimination, to file charges with the EEOC within 300 days of the last date of alleged discrimination. 29 U.S.C. §§ 626(d)(2) & 633(b); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). A plaintiff's obligation to timely file with the EEOC is a condition precedent to filing suit under the ADEA. *Seredinski v. Clifton Precision Prods. Co., Div. of Litton Sys., Inc.*, 776 F.2d 56, 64 (3d Cir. 1985) (Sarokin, J., concurring in part and dissenting in part).

The pleading of a condition precedent is governed by Federal Rule of Civil Procedure 9(c), which provides:

> Conditions Precedent. In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been

24

performed, a party must do so with particularity.

Fed. R. Civ. P. 9(c).

Here, Hildebrand's original complaint alleged:

> All conditions precedent to jurisdiction under section 706 of Title VII, have occurred or been complied with. Plaintiff filed a claim of employment discrimination with the [EEOC]. The EEOC issued a Notice of Right to Sue. This complaint is filed within 90 days of such Notice of Right to Sue.

(A. 2.)

The District Court dismissed Hildebrand's ADEA claim, holding that he failed to sufficiently plead the satisfaction of this condition precedent. Specifically, the District Court applied the pleading standards set forth in *Twombly* and *Iqbal*, which held that Federal Rule of Civil Procedure 8(a) requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.

The District Court erred by applying *Iqbal* and *Twombly* to Hildebrand's pleading of the conditions precedent to filing suit under the ADEA. *Iqbal and Twombly* interpreted Federal Rule of Civil Procedure 8(a), which

25

governs the standard for pleading a claim for relief. The pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a). Neither *Iqbal* nor *Twombly* purport to alter Rule 9. We see no indication that those cases sought to override the plain language of Rule 9(c), and we therefore conclude that the pleading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*.

### 2. The Intake Questionnaire

Our conclusion that the District Court erred in applying *Iqbal* and *Twombly* to the pleading of conditions precedent does not end our inquiry. Following the dismissal of his first complaint, Hildebrand filed an amended complaint, which alleged his satisfaction of the ADEA's conditions precedent in greater detail. Specifically, Hildebrand alleged that he had filed a charge with the EEOC within 300 days of the last date of discrimination. He attached his charge of discrimination to his amended complaint.

In their motions to dismiss the amended complaint, Appellees contested Hildebrand's asserted final date of discrimination, contending that the last date of discrimination was his February 18, 2011 termination. Under this reasoning, Hildebrand's charge of discrimination, which he filed on January 11, 2012, would be untimely. In response to the motions to dismiss, Hildebrand argued that the EEOC Intake Questionnaire, which he filed on December 1, 2011, constituted a timely-filed charge of discrimination.

The District Court dismissed Hildebrand's ADEA claims with prejudice, concluding that the last date of

26

discrimination was February 18, 2011, and that the January 11, 2012 charge was therefore untimely. The District Court did not consider the Intake Questionnaire.[2] We agree that Hildebrand's Intake Questionnaire constitutes a timely filed charge.

An EEOC filing constitutes a charge of discrimination if it satisfies the requirements of 29 C.F.R. § 1626.6, and can "reasonably [be] construed as a request for [the EEOC] to take remedial action to protect the employee's rights." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). In *Holowecki*, the Supreme Court adopted a "permissive" interpretation of the charge requirement, explaining that a "wide range of documents," including an intake questionnaire, "may be classified as charges." *Id.* at 402.

---

[2] Hildebrand concedes that the Intake Questionnaire was not attached to his amended complaint. He did, however, submit the questionnaire as an exhibit to his response to Allegheny County's motion to dismiss. While a court is limited to considering the pleadings in deciding a Rule 12(b)(6) motion, we are satisfied that the Intake Questionnaire was properly before the District Court. There was no dispute as to its authenticity, and it directly corroborated Hildebrand's claim that he had satisfied the conditions precedent to filing suit under the ADEA. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

Following *Holowecki*, the EEOC revised its Intake Questionnaire to require claimants to check a box to request that the EEOC take remedial action. This box, commonly referred to as "Box 2," states:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. . . .

(A. 262, 291). Under the revised form, an employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination. Hildebrand did precisely this. Additionally, Hildebrand's questionnaire is dated December 1, 2011, which is within 300 days of the February 18, 2011 letter of suspension and notice of termination. Thus, it was timely filed.

The Intake Questionnaire did not, however, preserve Hildebrand's claim against Allegheny County. As the County observes, Hildebrand's EEOC Intake Questionnaire names "Allegheny County District Attorney's Office" as the only respondent. Thus, it fails to allege any discrimination on the part of the County. We will therefore vacate the District Court's dismissal of Hildebrand's ADEA claim as to the DA's Office because the Intake Questionnaire was a timely filed charge of discrimination, but we will affirm dismissal of

28

the ADEA claim against Allegheny County, because the Intake Questionnaire demonstrates that Hildebrand failed to timely exhaust his administrative remedies as to the County.

## III.

For the foregoing reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.