**DUNKIN' DONUTS FRANCHISING LLC, a Delaware limited liability company; Dunkin' Donuts Franchised Restaurants LLC, a Delaware limited liability company; DD IP Holder LLC, a Delaware limited liability company;**

**Baskin-Robbins Franchising LLC, a Delaware limited liability company; BR IP Holder LLC, a Delaware limited liability company**

v.

**C3WAIN INC., a New Jersey corporation; CWAIN Inc., a New Jersey corporation; Moothedath Ramachandran, Jr., a resident of the State of New Jersey C3WAIN, INC. and Moothedath Ramachandran, Appellants**

No. 16-1766

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) December 20, 2016

(Filed: February 3, 2017)

Robert B. Nussbaum, Esq., Joan M. Schwab, Esq., Saiber, Florham Park, NJ, David E. Worthen, Esq., Quarles & Brady, Washington, DC, for Plaintiffs-Appellees

Christopher J. Hanlon, Esq., Fredrick P. Niemann, Esq., Hanlon & Niemann, Freehold, NJ, for Defendant CWAIN Inc.

Christopher J. Hanlon, Esq., Fredrick P. Niemann, Esq., Hanlon & Niemann, Freehold, NJ, for Defendants-Appellants C3WAIN Inc., Moothedath Ramachandran, Jr.

Before: SMITH, Chief Judge, McKEE, and SHWARTZ, Circuit Judges.

## OPINION *

SHWARTZ, Circuit Judge.

C3WAIN, Inc. and Moothedath Ramachandran, Jr. ("Mr. Ramachandran," and collectively, "Franchisees") appeal from the District Court's order granting summary judgment in favor of Dunkin' Donuts

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC, DD IP Holder LLC, Baskin-Robbins Franchising LLC, and BR IP Holder LLC (collectively, "Dunkin'"). Because the record shows no genuine dispute as to the fact that Mr. Ramachandran violated the franchise agreement by misrepresenting his involvement in another business, the District Court did not err in granting summary judgment. We will therefore affirm.

## I

Mr. Ramachandran is the sole shareholder of C3WAIN, which owns the lease and franchise rights for a store (the "Dunkin' Donuts store") that sells both Baskin-Robbins and Dunkin' Donuts products in the Freehold Raceway Mall in New Jersey. C3WAIN, by and through Mr. Ramachandran, entered a franchise agreement with Dunkin'. The agreement stated that C3WAIN would "be in default" of the Agreement if its "owners commit a fraud upon [Dunkin'] ... relating to a business franchised or licensed by [Dunkin']." App. 86 ¶¶ 14.0, 14.0.4. If C3WAIN violated the fraud provision, the agreement gave Dunkin' the right to terminate the entire franchise agreement.

Before he ever discussed opening the Dunkin' Donuts store with the Mall's agents, Mr. Ramachandran contacted the Mall's leasing agent and informed her that his wife, Raji Ramachandran ("Mrs. Ramachandran"), sought to open a Red Mango Frozen Yogurt and Smoothies franchise store (the "Red Mango store") in the Mall.

While negotiating the Dunkin' Donuts store lease with the Mall and the franchise agreement with Dunkin', Mr. Ramachandran participated (along with Mrs. Ramachandran) in negotiations for the Red Mango store lease. During these negotiations, Mr. Ramachandran sent an email to the leasing agent, copying several Dunkin' employees, and characterizing the concept as a " 'Youthtopia' Dunkin / Red Mango" that would have "a different look and feel" and would not be "a 'run of the mill' store." App. 168. One of the Dunkin' employees responded to Mr. Ramachandran and asked "[d]o you own any Red Mango stores currently? You can not be approved to develop a Red Mango with Dunkin' Donuts at the mall." App. 167. Mr. Ramachandran replied "[n]o, I am not developing any Red Mango stores nor do I have [a] franchise agreement with them." App. 167. A few days later, Mr. Ramachandran sent Dunkin' an email stating:

> [P]lease be informed that I DO NOT HAVE A RED MANGO. I am not a franchise of that company, own any stores, nor do I have an agreement to develop any stores for them. They ([R]ed Mango) would be like any other store in the mall like a Star Bucks[sic], Gloria Jeans or the local bagel store. I have no financial interest in a Red Mango therefore, it is indeed not a factor to be concerned about.

App. 171.

Mr. Ramachandran later sent an email to the Mall leasing agent that stated "[d]o not talk about [R]ed [M]ango with [a Dunkin' employee]." App. 297. In reply, the lease agent asked "[d]oes he not know [R]ed [M]ango is going next door?" App. 297. Mr. Ramachandran then replied, "No ... I don't want him to cancel Dunkin," App. 297 (ellipsis in original), and separately told the leasing agent: "I don't need to tell Dunkin what my wife does. I am not an owner of Red Mango nor ... am [I] the franchisee for Red Mango. We are just splitting the space to make the economics work." App. 296.

Mr. and Mrs. Ramachandran eventually opened both stores next door to each other in the Mall. Mrs. Ramachandran leased

the Mall storefront and opened the Red Mango store through the corporate entity Greensphere Inc.,[1] of which she is the sole shareholder. Both Mr. and Mrs. Ramachandran personally guaranteed Greensphere Inc.'s lease for the Red Mango storefront. In the guarantor agreement, Mr. Ramachandran represented that he had a financial interest in the tenant, Greensphere Inc. Additionally, before the stores opened, another corporate entity wholly owned by Mr. Ramachandran obtained a $250,000 bank loan. Mr. Ramachandran used $100,000 of the loan for construction of the Dunkin' Donuts store and transferred the remaining $150,000 to Greensphere Inc. as a loan for the construction of the Red Mango store.

Approximately a year after the parties executed the franchise agreement, Dunkin' served a notice of default on Franchisees. The notice stated that Franchisees breached the franchise agreement by, among other things, "commit[ing] fraud in connection with your franchises by: (1) intentionally misrepresenting your involvement with a competing business in order to induce Franchisor's approval of your Freehold Raceway Mall Franchise, and (2) continu-

ing to conceal from Franchisor your interest in a competing business." App. 174. The notice informed Franchisees that Dunkin' was terminating the agreement and demanded that Franchisees stop using Dunkin' Donuts and Baskin-Robbins proprietary marks. Mr. Ramachandran refused and continued to operate the Dunkin' Donuts store.

Dunkin' then filed suit, alleging, among other things, breach of contract resulting from Mr. Ramachandran's alleged fraud. After discovery, Dunkin' moved for summary judgment. The District Court granted the motion in part,[2] holding that C3WAIN "committed fraud against Dunkin' in the acquisition of the Freehold Mall shop." App. 13. The District Court then declared the franchise agreement terminated and ordered Franchisees to comply with their post-termination obligations under the franchise agreement. Franchisees filed this interlocutory appeal.

## II [3]

We must decide whether the District Court correctly found that Franchisees breached the franchise agreement by

1.  Mr. and Mrs. Ramachandran established Greensphere Inc. for the purpose of operating a recycling business, but it never conducted any recycling business.

2.  In addition to the breach of contract claim, Dunkin' brought claims for trademark infringement, trade dress infringement, and unfair competition, and Franchisees brought a counterclaim alleging that the termination of the franchise agreement violated the New Jersey Franchise Practices Act ("NJFPA"). Identical claims were also brought in relation to two other Dunkin' franchises owned by another corporate entity Mr. Ramachandran controlled. The District Court granted summary judgment in favor of Dunkin' on the claims related to the Freehold Mall store. This appeal is limited to those claims.

3.  The District Court had jurisdiction under 15 U.S.C. § 1116 and 28 U.S.C. §§ 1331,

1332(a), and 1338. The District Court ordered C3WAIN to, among other things, immediately comply with its post-termination obligations under the franchise agreement, which include an obligation to cease the operation of the Dunkin' Donuts store. This order granted Dunkin' injunctive relief and we therefore have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) over the orders related to the injunction, namely the orders granting summary judgment on the breach of contract claim and the counterclaim regarding the legality of the termination order under the NJFPA. See Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J., 867 F.2d 1455, 1466 (3d Cir. 1989) (holding that an order that can be "immediately enforced" and that "presents serious, perhaps irreparable consequences" constitutes injunctive relief under § 1292(a) (internal quotation marks omitted)).

committing fraud "relating to a business franchised or licensed by [Dunkin']." App. 86 ¶ 14.0.4 (franchise agreement). "To establish a breach of contract under Massachusetts law, a plaintiff must show that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage."[4] Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 100 F.Supp.3d 50, 55 (D. Mass. 2015) (internal quotation marks and citation omitted). There is no dispute that the parties had a valid contract. Dunkin' alleges that the contract was breached because Franchisees committed fraud. To succeed on a claim of fraud under Massachusetts law, a plaintiff must show: (1) that a defendant made "a false representation of a material fact," (2) that defendant acted "with knowledge of its falsity" and "for the purpose of inducing plaintiff to act thereon," and (3) "that plaintiff relied upon the representation as true and acted upon it to his detriment." FranCounsel Grp., LLC v. Dessange Int'l SA, 980 F.Supp.2d 1, 6 (D. Mass. 2013) (citation omitted); see also Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002). Mr. Ramachandran's representations to Dunkin' meet all of these elements.

First, a plaintiff may satisfy the "false representation" element by showing either a false statement or omission of material information. In addition, "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir. 1985). A partial disclosure constitutes a false representation where it provides a misleading response to a plaintiff's inquiry about a material fact. See id.; see also Damon v. Sun Co., 87 F.3d 1467, 1478 (1st Cir. 1996) (holding that a false representation occurred where defendant told a potential property buyer that the property was in good condition and omitted the fact that there had been a 2,000 gallon oil spill on the property approximately five years earlier).

Mr. Ramachandran's partial disclosures to Dunkin' amounted to false representations of material facts. In response to specific questions from Dunkin' about whether he was developing a Red Mango store in the Mall or had an interest in such a store, Mr. Ramachandran repeatedly denied any such involvement, despite the fact that he participated in establishing the Red Mango store by engaging in negotiations over its lease, personally guaranteeing that lease, and providing the Red Mango store with a $150,000 loan. Moreover, when Dunkin' asked Mr. Ramachandran "[d]o you own

Our review of the District Court's grant of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the nonmovant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4. The franchise agreement is governed by Massachusetts law.

any Red Mango stores currently? You can not be approved to develop a Red Mango with Dunkin' Donuts at the mall," App. 167, Mr. Ramachandran categorically denied any involvement, and went so far as to say that "[t]hey ([R]ed Mango) would be like any other store in the mall like a Star Bucks [sic], Gloria Jeans or the local bagel store. I have no financial interest in a Red Mango therefore, it is indeed not a factor to be concerned about." App. 171. These responses were misleading partial disclosures since Mr. Ramachandran concealed his involvement with the Red Mango store even after Dunkin' expressed concern over any involvement with a Red Mango store. See Maxwell v. Ratcliffe, 356 Mass. 560,254 N.E.2d 250, 252 (1969) (stating that once a plaintiff inquired into specific facts, "there was special obligation on the [defendants] to avoid half truths and to make disclosure at least of any facts known to them or with respect to which they had been put on notice"). In short, even if the District Court found that there is a genuine issue of fact as to whether Mr. Ramachandran has a financial interest in the Red Mango store,[5] there is no question that he partially disclosed his relationship to the Red Mango store in a misleading manner.

Second, Mr. Ramachandran knew that his partial disclosures conveyed misleading statements of material facts and he made them "for the purpose of inducing plaintiff to act thereon." FranCounsel Grp., LLC, 980 F.Supp.2d at 6 (citation omitted). Mr. Ramachandran explicitly directed the Mall leasing agent not to tell Dunkin' about the Red Mango store because he did not want Dunkin' to "cancel" the franchise agreement. App. 297. He thus withheld information with the express purpose of misleading the company.

Finally, Dunkin's emails to Mr. Ramachandran stating that it would not enter into the franchise agreement if he was involved in developing a Red Mango store show that it "relied upon the representation [that he was not] as true and acted upon it to [its] detriment." FranCounsel Grp., LLC, 980 F.Supp.2d at 6. Dunkin' has a policy that "we do not permit into the Baskin-Robbins System someone who has an interest in any ice cream or frozen treats retail business. Competition in violation of this principle would include ... Yogurt Concepts." App. 164. Thus, if Dunkin' determined that Mr. Ramachandran had an interest in a retail business with a "Yogurt Concept," then it would not have entered the franchise agreement. Dunkin' relied on Mr. Ramachandran's disclosures that he did not have an interest in the Red Mango and thereafter entered into the franchise agreement with him. Dunkin' had an interest in ensuring its franchisees were loyal to its products and it was harmed by granting a franchise to an entity whose loyalties were divided. See Com-

---

**5.** While the District Court noted that disputed issues of fact existed concerning Mr. Ramachandran's financial interest in the Red Mango store and whether the two stores sold substantially similar products, those disputes are not relevant to determining whether Mr. Ramachandran fraudulently misrepresented material facts in violation of the franchise agreement. Those two factual issues go to whether Mr. Ramachandran breached the "restrictive covenant" provision, which requires that C3WAIN and its shareholders refrain from having "a direct or indirect interest in ... any business ... that sells products that are the same as or substantially similar to those sold in Dunkin' Donuts or Baskin-Robbins restaurants." App. 81. Before the District Court, Dunkin' argued that Mr. Ramachandran violated this provision and that such violation constituted an independent ground to find that C3WAIN breached the contract. The District Court refrained from granting summary judgment on this issue and instead granted summary judgment on the breach of contract claim on the basis of the anti-fraud clause. Conclusions related to the restrictive covenant thus have no bearing on the breach of the anti-fraud provision now under review.

monwealth v. Lucas, 472 Mass. 387, 34 N.E.3d 1242, 1249 (2015) (stating that a requirement for the detrimental reliance element is that the plaintiffs "acted upon [the false representation] to their damage" (citation omitted)). Regardless of whether Mr. Ramachandran's involvement in the Red Mango store amounted to a financial interest, Dunkin's policy and email inquiries demonstrate that his relationship with the Red Mango store affected Dunkin's willingness to enter the franchise agreement with him.

 Thus, the District Court correctly concluded that no reasonable jury could find that Franchisees did not fraudulently misrepresent Mr. Ramachandran's involve-

6. Franchisees argue that the District Court failed to make specific factual findings regarding each of the four elements of the fraud claim. Regardless of the veracity of this claim, on plenary review we "may affirm the district court on any ground supported by the record." Hildebrand v. Allegheny Cty., 757 F.3d 99, 104 (3d Cir. 2014).

7. The District Court also correctly concluded that the termination did not violate the NJFPA. The Act applies here because C3WAIN was a New Jersey franchisee. Liberty Sales Assocs., Inc. v. Dow Corning Corp., 816 F.Supp. 1004, 1008 (D.N.J. 1993) (citing Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 614 A.2d 124, 133–35 (1992)). Despite its applicability, it does not provide a basis for relief. In relevant part, the NJFPA provides that "[i]t shall be a violation of this act for any franchisor ... to terminate ... a franchise without having first given written notice setting forth all the reasons for such termination." N.J. Stat. Ann. § 56:10–5. Dunkin' sent written notice to Mr. Ramachandran, as the owner of C3WAIN, informing him that he had breached the franchise agreement by, among other things, "commit[ing] fraud in connection with your franchises by ... intentionally misrepresenting your involvement with a competing business in order to induce Franchisor's approval of your Freehold Raceway Mall Franchise." App. 174. This letter provided adequate notice of the grounds for termination by informing

ment in the Red Mango store and the Court therefore properly held that such conduct breached the franchise agreement.[6] See Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).[7]

### III

For the foregoing reasons, we will affirm the order granting summary judgment.

C3WAIN that the alleged breach was based on the anti-fraud clause of the agreement and that Mr. Ramachandran committed fraud by misrepresenting his involvement with a competing business.

Franchisees' argument that the fraud did not constitute a failure to "substantially comply" with the agreement sufficient to establish good cause for termination under the NJFPA also fails. The NJFPA provides that "[i]t shall be a violation of this act for a franchisor to terminate ... a franchise without good cause. For the purposes of this act, good cause for terminating ... a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J. Stat. Ann. § 56:10–5. "[S]ubstantial compliance—at a minimum—requires that the franchisee refrain from acting in direct defiance of a term of the Agreement." Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 91 F.Supp.2d 733, 740 (D.N.J. 2000) (concluding that a franchisor had good cause to terminate a franchise agreement where franchisee opened a competing store next to the franchise store), aff'd, 263 F.3d 296 (3d Cir. 2001). Dunkin' terminated the agreement because, among other reasons, C3WAIN breached the express contract provision that prohibited fraudulent conduct. The fraud here amounted to "direct defiance of a term of the Agreement." Id. Thus, the District Court properly granted summary judgment in Dunkin's favor on Franchisees' NJFPA counterclaim.