A. Rule 12(b)(1) - Lack of Standing
1. Standard of Review
On a Rule 12(b)(1) motion, a court must first determine if the motion is a "facial" or a "factual" attack. Constitution Party of Pa. v. Aichele , 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "considers a claim on its face" and argues that the claim "is insufficient to invoke the subject matter jurisdiction of the court." Id. at 358. With a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Id. (quoting In re Schering Plough Corp. Intron , 678 F.3d 235, 243 (3d Cir. 2012) ). With a factual attack, by contrast, "a court may weigh and 'consider evidence outside the pleadings.' " Id. (quoting Gould Elecs. Inc. v. United States , 220 F.3d 169, 176 (3d Cir. 2000) ). Standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Id. at 357 (quoting Ballentine v. United States , 486 F.3d 806, 810 (3d Cir. 2007) ).
2. Discussion
Defendant's motion is properly understood as a facial attack. Thus, we consider whether Plaintiffs' allegations and attached documents establish the necessary standing in the light most favorable to Plaintiffs.
Defendant does not challenge Plaintiffs' standing to assert their own claims under Pennsylvania law. Rather, Defendant challenges their standing to assert claims on behalf of out-of-state putative class members who would potentially have claims arising under the laws of other states. We concede that this is a murky area of law lacking Third Circuit precedent and populated by the divergent conclusions of district courts.
Article III standing requires an "injury in fact," a causal connection between the injury and conduct complained of, and redressability. Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). As noted, there appears to be no dispute that Plaintiffs have standing to state their own claims under Pennsylvania law. Furthermore, there is no indication that Plaintiffs are attempting to allege that they can recover under the laws of other states. Finally, Defendant is not articulating a challenge to the potential standing, or lack thereof, of putative class members. Rather, Defendant essentially suggests that Plaintiffs may not allege the claims of out-of-state putative class members on their behalf because Plaintiffs do not personally have standing for those claims.
Several of our sister courts within the Third Circuit have agreed with Defendant's position. See In re Insulin Pricing Litig. , 3:17-cv-699, 2019 WL 643709 (D.N.J. Feb. 15, 2019) ; In re Niaspan Antitrust Litig. , MDL No. 2460, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ; In re Wellbutrin XL Antitrust Litig. , 260 F.R.D. 143 (E.D. Pa. 2009). Other courts within our Circuit have taken Plaintiffs' perspective. See In re Generic Pharmaceuticals Pricing Antitrust Litig. , 368 F.Supp.3d 814 (E.D. Pa. 2019) ; In re Thalomid and Revlimid Antitrust Litig. , 14-6997, 2015 WL 9589217 (D.N.J. Oct. 29, 2015) ; In re Chocolate Confectionary Antitrust Litig. , 602 F.Supp.2d 538 (M.D. Pa. 2009) (Conner, J.).
*462 Plaintiffs' position also finds support in other circuits. The First Circuit suggested that requiring named plaintiffs to have a stake in every claim, including those brought on behalf of a putative class, "would 'confuse[ ] the requirements of Article III and Rule 23.' " In re Asacol Antitrust Litig. , 907 F.3d 42, 49 (1st Cir. 2018) (quoting Fallick v. Nationwide Mut. Ins. Co. , 162 F.3d 410, 421 (6th Cir. 1998) ).
Indeed, such an approach would render superfluous the Rule 23 commonality and predominance requirements because any case that survived such a strict Article III analysis would by definition present only common issues. So the question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?
Id. Further, as the Sixth Circuit clarified, there is a distinction between the named plaintiff vis-à-vis the defendant and the named plaintiff's role as a potential class representative. The named plaintiff, as a threshold matter, must "demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." Fallick , 162 F.3d at 423 (citing Brown v. Sibley , 650 F.2d 760, 770 (5th Cir. 1981) ). "[H]owever, 'once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.' " Id. (quoting Senter v. Gen. Motors Corp. , 532 F.2d 511, 517 (6th Cir. 1976) ) (emphasis added). "Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." Id. (citing Cooper v. Univ. of Tex. at Dallas , 482 F.Supp. 187 (N.D. Tex. 1979) ). The Second Circuit has similarly held that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing." Langan v. Johnson & Johnson Consumer Cos., Inc. , 897 F.3d 88, 96 (2d Cir. 2018).
Understanding the lack of binding precedent here, we find the case law supporting Plaintiffs' argument more persuasive. As noted, Defendant does not argue that Plaintiffs lack standing to bring their own claims under Pennsylvania law. Furthermore, the claims under the laws of other states are based on Defendant's alleged general conduct that is identical to Plaintiffs' individual claims. Thus, we find that Plaintiffs' capacity to state claims under the laws of other states on behalf of putative class members, who themselves likely would have standing to raise those claims, is a matter to be decided under the rubric of Rule 23, not constitutional standing under Article III. Therefore, we will deny Defendant's motion to dismiss for lack of standing.
B. Rule 12(b)(2) - Lack of Personal Jurisdiction
1. Standard of Review
" '[T]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." Metcalfe v. Renaissance Marine, Inc. , 566 F.3d 324, 330 (3d Cir. 2009) (quoting Pinker v. Roche Holdings Ltd. , 292 F.3d 361, 368 (3d Cir. 2002) ). " '[O]nce a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.' " Id. (quoting *463 Dayhoff Inc. v. H.J. Heinz Co. , 86 F.3d 1287, 1302 (3d Cir. 1996) ). Where, as here, the district court does not hold an evidentiary hearing on the matter, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction." Id. (quoting O'Connor v. Sandy Lane Hotel Co. , 496 F.3d 312, 316 (3d Cir. 2007) ). Furthermore, "in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Id. (quoting Toys 'R' Us, Inc. v. Step Two, S.A. , 318 F.3d 446, 457 (3d Cir. 2003) ).
2. Discussion
Defendant argues that the claims of non-Pennsylvania putative class members based on the laws of other states must be dismissed for lack of personal jurisdiction. Defendant draws primarily on the recent opinion of the United States Supreme Court in Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty. , --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017).
The Supreme Court has recognized two types of personal jurisdiction: general and specific. Bristol-Myers Squibb , 137 S.Ct. at 1779. For a corporation, general jurisdiction is the state(s) where the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman , 571 U.S. 117, 139, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ). Generally, a corporation is "at home" in the states of incorporation and principal place of business. Id. at 137, 134 S.Ct. 746. In this case, Defendant is incorporated and principally located in New Jersey. Thus, there is no indication, nor is there any argument, that Plaintiffs can establish general jurisdiction over Defendant in Pennsylvania.
Although a plaintiff may bring any claim against a defendant where there is general jurisdiction, specific jurisdiction requires that the claim be connected to the forum state. Bristol-Myers Squibb , 137 S.Ct. at 1780. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " Id. (quoting Goodyear , 564 U.S. at 919, 131 S.Ct. 2846 ). Here, there appears to be no question that Plaintiffs can establish specific jurisdiction for their own claims, as they are based in Pennsylvania. Defendant argues, rather, that, under Bristol-Myers Squibb , non-Pennsylvania putative class members who would raise out-of-state claims cannot establish specific jurisdiction in this forum, as their claims have no connection to Pennsylvania.
Bristol-Myers Squibb considered specific jurisdiction in the context of a state mass tort action filed in California by more than 600 plaintiffs across eight complaints. Id. at 1778. Of the totality of plaintiffs, 86 resided in California and raised California-based claims, while the remainder were from any of 33 other states. Id. Although the complaints alleged claims under California law, the underlying conduct that was related to the out-of-state plaintiffs did not occur in California. Id. The case initially worked its way up to the California Supreme Court, which applied a "sliding scale approach to specific jurisdiction" in which "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." Id. (quoting Bristol-Myers Squibb Co. v. Super. Ct. , 206 Cal.Rptr.3d 636, 377 P.3d 874, 889 (2017) ).
*464 Drawing on "settled principles regarding specific jurisdiction," the United States Supreme Court determined that the California Supreme Court's "sliding scale approach" "is difficult to square with our precedents." Id. at 1781. The approach, the Court noted, "resembles a loose and spurious form of general jurisdiction." Id. As the Court explained:
The present case illustrates the danger of the California approach. The State Supreme Court found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims. As noted, the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California - and allegedly sustained the same injuries as did the nonresidents - does not allow the State to assert specific jurisdiction over the nonresidents' claims.... What is needed - and what is missing here - is a connection between the forum and the specific claims at issue.
Id. The Court ultimately held that the California courts could not claim specific jurisdiction over the claims of those plaintiffs who were "not California residents and do not claim to have suffered harm in that State." Id. at 1782.
The Court's holding left some questions unanswered, however. The majority itself acknowledged that "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1783-84. Furthermore, in her dissent, Justice Sotomayor noted that "[t]he Court does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at 1789, n. 4 (Sotomayor, J., dissenting).
Not unexpectedly, Plaintiffs argue that Bristol-Myers Squibb does not apply to federal courts and does not apply to class actions. Defendant argues to the contrary. Unfortunately, not only has the Supreme Court left these questions open, but no circuit court has filled the vacuum with clarity. The district courts, therefore, have grappled with these questions to differing results. As Plaintiffs point out, correctly it seems, a majority of the district courts who have faced these questions have determined that Bristol-Myers Squibb does not apply to class actions (although most, if not all, appear to agree that it should apply equally to federal courts, especially those sitting in diversity). See Sotomayor v. Bank of America, N.A. , 377 F.Supp.3d 1034, 1036-37, 2019 WL 1985115, at *1 (C.D. Cal. 2019) ; Molock v. Whole Foods Mkt., Inc. , 297 F.Supp.3d 114, 126-27 (D.D.C. 2018) ; Day v. Air Methods Corp. , No. 17-183, 2017 WL 4781863, at *4 (E.D. Ky. Oct. 23, 2017) ; Sanchez v. Launch Tech. Workforce Sols, LLC , No. 17-1904, 2018 WL 1875615, at *1 (N.D. Ga. Jan. 26, 2018) ; In re Morning Song Bird Food Litig. , No. 12-1592, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ; Fitzhenry-Russell v. Dr. Pepper Snapple Grp. , No. 17-564, 2017 WL 4224723, at *5 (N.D. Cal. Sep. 22, 2017) ; Swamy v. Title Source, Inc. , No. 17-1175, 2017 WL 5196780, at *1 (N.D. Cal. Nov. 10, 2017) ; Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods. , No. 17-2161, 2018 WL 1377608, at *5 (E.D. La. Mar. 19, 2018) ; Alvarez v. NBTY, Inc. , No. 17-567, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ;
*465 In re Chinese-Manufactured Drywall Prods. Liab. Litig. , No. 09-2074, 2017 WL 5971622, at *15 (E.D. La. Nov. 28, 2017).
Other courts, most notably, the Northern District of Illinois, have found that Bristol-Myers Squibb applies to class actions. See Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc. , 301 F.Supp.3d 840, 861 (N.D. Ill. 2018) ; DeBernardis v. NBTY, Inc. , No. 17-6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ; Anderson v. Logitech, Inc. , No. 17-6104, 2018 WL 1184729 (N.D. Ill. Mar. 7, 2018) ; McDonnell v. Nature's Way Prods., LLC , No. 16-5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ; Wenokur v. AXA Equitable Life Ins. Co. , No. 17-165, 2017 WL 4357916, at *5 (D. Ariz. Oct. 2, 2017).
As many district courts have stated, there are distinct differences between a mass tort action and a Rule 23 class action. Notably, "a plaintiff in a mass tort action is named as a plaintiff, making each 'a real party in interest.' In contrast, only the proposed class representative is actually named on the complaint in a class action." Sotomayor , 377 F.Supp.3d at 1038, 2019 WL 1985115, at *2. Furthermore, in other aspects putative, unnamed class members are distinguished from traditional plaintiffs, such as not having to establish Article III standing. Neale v. Volvo Cars of North America, LLC , 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing...."). Moreover, the Supreme Court's holding clearly did not establish some new "bright line" rule as it relates to specific jurisdiction. Indeed, the Court explicitly stated that its holding was rooted in settled principles of specific jurisdiction. Instead, the Court's primary aim, it appears to us, was to stop the gradual creep of the boundaries of specific jurisdiction, which the California Supreme Court's "sliding scale approach" would have accomplished. None of this is to suggest that the Court's ruling did not introduce confusion, as it most certainly did, but instead that the Court's holding appears to have been somewhat targeted to a certain factual scenario, which is not present before us. This may explain why the Court chose not to clarify the applicability of the ruling to federal cases or to class actions, even if such clarification would have been dictum.
Taking all of this into consideration, we will decline to apply Bristol-Myers Squibb to the case at bar. It is plain to see that Bristol-Myers Squibb is not squarely on point, and we see no basis to extend the application of what otherwise appears to be a limited holding. Accordingly, we will deny Defendant's motion to dismiss as it relates to personal jurisdiction.
We now turn to Defendant's arguments pursuant to Rule 12(b)(6) for failure to state a claim.
C. Rule 12(b)(6) - Failure to State a Claim
1. Standard of Review
In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny , 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd. , 292 F.3d 361, 374 n.7 (3d Cir. 2002) ). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint,...and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters *466 of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist. , 452 F.3d 256, 260 (3d Cir. 2006).
A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson , 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...." Victaulic Co. v. Tieman , 499 F.3d 227, 235 (3d Cir. 2007) (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ).
Under the two-pronged approach articulated in Twombly and later formalized in Iqbal , a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly , 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. Iqbal , 556 U.S. at 679, 129 S.Ct. 1937. Next, the district court must identify "the 'nub' of the ... complaint - the well-pleaded, nonconclusory factual allegation[s]." Id. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. See id.
However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips , 515 F.3d at 231 (citing Twombly , 550 U.S. at 556-57, 127 S.Ct. 1955 ). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.
2. Discussion
Defendant advances several arguments based on Rule 12(b)(6). Broadly speaking, Defendant argues that Plaintiffs' claims must be dismissed because (1) Plaintiffs did not satisfy a condition of the contract that they provide Defendant notice and an opportunity to cure before filing suit; (2) the mortgage agreement expressly allows the inspections and fees; and (3) the property inspection fees were reasonable and appropriate. Regarding the claims under state consumer protection laws, Defendant argues that Plaintiffs were not deceived about the inspection fees and that the alleged violations of the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA) are not supported. Finally, Defendant contends that Plaintiffs' unjust enrichment claim fails because the conduct at issue is the subject of an express contract. We will begin with Defendant's argument *467 that Plaintiffs failed to satisfy a condition precedent.
a. Condition Precedent
"The pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a)." Hildebrand v. Allegheny Cnty. , 757 F.3d 99, 112 (3d Cir. 2014). Rule 9(c) states: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). At Paragraph 83 of their Complaint, Plaintiffs allege that "[a]ll conditions precedent to all alleged claims for relief have occurred or been performed." (Doc. 1). Defendant argues that this is insufficient. We disagree.
In Hildebrand , the allegation in question, which the Third Circuit approved, stated: "All conditions precedent to jurisdiction under section 706 of Title VII, have occurred or been complied with. Plaintiff filed a claim of employment discrimination with the [EEOC]. The EEOC issued a Notice of Right to Sue. This complaint is filed within 90 days of such Notice of Right to Sue." Id. at 111-12. Defendant appears to suggest that the Third Circuit's approval of the above allegation indicates that this degree of specificity is required. Although that allegation certainly contains more facts than Plaintiffs' allegation here, there is no indication in Hildebrand that the additional facts in that case represented the minimum required to satisfy Rule 9(c).
None of the cases Defendant cites in support guides us in its favor. In Pfendler v. PNC Bank, N.A. , No. 18-cv-361, 2018 WL 2688502 (W.D. Pa. June 5, 2018), the plaintiff "admit[ted] that she ... failed to comply with the binding notice and cure provision" in her contract. Pfendler , 2018 WL 2688502, at *3. Meanwhile, the plaintiff in Jones v. Amazon , No. 15-cv-1106, 2016 WL 7757285 (M.D. Pa. Dec. 9, 2016) (Saporito, Jr., MJ.), "fail[ed] to allege exhaustion of administrative remedies, generally or otherwise." Jones , 2016 WL 7757285, at *2. Finally, in Danielsen v. Pa. Coll. of Tech., Cmty. Arts Ctr. , No. 4:13-cv-2927, 2015 WL 391096 (M.D. Pa. Jan. 28, 2015) (Brann, J.), the plaintiff brought an action under the Age Discrimination in Employment Act ("ADEA") but only alleged that she exhausted her administrative remedies before the Pennsylvania Human Relations Commission, not the Equal Employment Opportunity Commission, which would be a prerequisite to bringing an ADEA claim. Danielsen , 2015 WL 391096, at *3.
We also note that other courts have found language similar to Plaintiffs' allegation satisfactory under Rule 9(c). See Topping v. Fry , 147 F.2d 715, 717 (7th Cir. 1945) (finding satisfactory an allegation that "Plaintiff has duly performed all the terms, covenants and conditions of the herein-described agreement on his part to be performed"); Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd. , 826 F.Supp.2d 1127, 1129 (D. Minn. 2011) ("Cummins has alleged that '[a]ny conditions precedent to [its] right to demand performance by [Norman] have been performed.' This will suffice."); Jardine, Stephenson, Blewett & Weaver v. U.S. Fidelity & Guaranty Co. , 91 F.R.D. 284, 285 (D. Mont. 1981) (noting satisfaction of Rule 9(c) requirement with allegation stating that "[a]ll conditions precedent required by law have occurred or have been complied with"). We find, therefore, that Plaintiffs' allegation sufficiently meets the standard of Rule 9(c).
b. Mortgage Expressly Allows Inspections and Fees
Defendant next argues that the property inspection fees are expressly permitted by the mortgage agreement and, therefore, Plaintiffs cannot sustain any of their claims. Plaintiffs argue that Defendant *468 may only charge for property inspections that are reasonable and appropriate.
We must construe contracts "as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred." Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co. , 936 A.2d 1109, 1113 (Pa. Super. Ct. 2007) (citing Midomo Co., Inc. v. Presbyterian Hous. Dev. Co. , 739 A.2d 180, 191 (Pa. Super. Ct. 1999) ). "The construction of an unambiguous contract is a matter of law for the court...." Bryan v. Erie Cnty. Office of Children and Youth , 637 F.App'x 693, 697 (3d Cir. 2016) (quoting U & W Indus. Supply, Inc. v. Martin Marietta Alumina, Inc. , 34 F.3d 180, 185 (3d Cir. 1994) ) (emphasis added). However, "[w]hile unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co. , 588 Pa. 470, 905 A.2d 462, 481 (2006). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Id. at 481 (citing Kripp v. Kripp , 578 Pa. 82, 849 A.2d 1159, 1163 (2004) ). Furthermore, "[t]he court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation." Creeks v. Creeks , 422 Pa.Super. 432, 619 A.2d 754, 756 (1993) (citing Trumpp v. Trumpp , 351 Pa.Super. 205, 505 A.2d 601 (1985) ).
The relevant portions of the mortgage agreement are Sections 9 and 14, which state:
9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.
...
Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.
...
14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.... Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.
(Doc. 22, Ex. 1).
Defendant argues that the "reasonable and appropriate" language does not apply to Section 14. Read separately, each section appears to be straight forward. However, when considered together, as part of the whole contract, the relationship between Section 9 and 14 becomes less clear. Both sections refer to actions Defendant *469 could take to protect its "interest in the Property" and "rights under this Security Instrument." Both sections also indicate that Defendant can charge back any costs to Plaintiffs. Section 14 simply says Defendant "may charge" Plaintiffs for the fees, while Section 9 states that incurred costs "become additional debt" of Plaintiffs, which "shall bear interest at the Note rate from the date of disbursement...." (Id. ).
Defendant contends that Section 14 should be read as a specific provision that controls the general provision of Section 9 with respect to property inspection fees upon default. See Eighth North-Val, Inc. v. William L. Parkinson, D.D.S., P.C., Pension Trust , 773 A.2d 1248, 1255 (Pa. Super. Ct. 2001) (citing In re Alloy Mfg. Co. Emps. Trust , 411 Pa. 492, 192 A.2d 394 (1963) ) ("When interpreting contract language, specific provisions ordinarily will be regarded as qualifying the meaning of broad general terms in relation to a particular subject."). While the principle of the specific controlling the general makes good logical sense where contract provisions appear to be inconsistent, we are not certain that is the case here.
The central thrust of Section 14 concerns loan charges and specifically authorizes property inspection fees in cases of default. The remainder of Section 14 addresses whether fees can be charged or not (i.e., fees not expressly authorized can still be charged, but fees expressly prohibited cannot) and the steps to be taken if the loan is subject to laws that set maximum loan charges and the loan exceeds that maximum. In addition, as noted earlier, Sections 9 and 14 appear to handle charge-backs differently, with the charges in Section 14 seeming to be separate and akin to interest charges, while the costs in Section 9 are added to the total debt, which would itself bear interest. In other words, one could reasonably construe Section 14 as authorizing property inspections in default cases, where reasonable and appropriate, and permitting Defendant to charge inspection fees to Plaintiffs as a separate item, rather than adding those fees to the total interest-bearing debt. Because the two provisions, taken together, are susceptible to more than one reasonable interpretation, we find them to be ambiguous. Ambiguous contract terms are for the fact-finder to determine, and dismissal at this stage would be inappropriate.
c. The Fees Were Reasonable and Appropriate
Defendant argues that the fees, in any case, were reasonable and appropriate. Whether they were reasonable and appropriate, however, is plainly a fact-intensive question. Here, Plaintiffs plausibly alleged that the property inspections were automatically triggered upon default, regardless of any other circumstances, and potentially were not even reviewed by Defendant. Thus, Plaintiffs have plausibly alleged that the inspections were neither reasonable nor appropriate, which is sufficient to survive a motion to dismiss.
d. Plaintiffs Were Not Deceived by the Fees and Violations of the Pennsylvania Fair Credit Extension Uniformity Act are Unsupported
Defendant next suggests that Plaintiffs claims under state consumer protection laws fails because Plaintiffs were not deceived by the inspection fees and that the alleged violations of the Fair Credit Extension Uniformity Act ("FCEUA") are unsupported. Both sides seem to agree that the consumer protection claims sound in fraud and must be pled with particularity. Fed R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").
*470 Plaintiffs appear to base their claims on general "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).[2] Plaintiffs further allege that Defendant's violation of the FCEUA constitutes a violation of Pennsylvania's consumer protection law, as well.
Starting with the consumer protection laws, to base a claim on generally fraudulent or deceptive conduct, Plaintiffs must show not only a deceptive or fraudulent act, but that they "justifiably relied on [Defendant's] wrongful conduct or representation and that [they] suffered harm as a result of that reliance." Hunt v. U.S. Tobacco Co. , 538 F.3d 217, 223 (3d Cir. 2008) (quoting Yocca v. Pittsburgh Steelers Sports, Inc. , 578 Pa. 479, 854 A.2d 425, 438 (2004) ). Plaintiffs' allegations unfold as follows: (1) Defendant presented Plaintiffs with mortgage documents indicating that they would only pay for reasonable and appropriate fees; (2) Defendant knew that under its automated property inspection system, Plaintiffs would be charged for fees regardless of whether the inspections were reasonable or appropriate; (3) Defendant included the fees on Plaintiffs' periodic account statements; (4) Plaintiffs had no reason to believe that the charges on their statements were unreasonable or inappropriate; (5) the statements did not indicate that the charges were unreasonable or inappropriate; (6) relying on the statements to be accurate, Plaintiffs paid for the inspection fees under the assumption that they must be reasonable and appropriate. (Doc. 1 at ¶¶ 136-141).
Assuming Plaintiffs allegations to be true, it is plausible that Defendant knew its practice of automatic property inspections could, at least sometimes, result in unreasonable or inappropriate fees charged to its customers. Those customers, such as Plaintiffs, relying on the language of the mortgage agreement and the expectation that Defendant would not charge them for unreasonable fees, plausibly could have been deceived into thinking that Defendant was only requesting property inspections after considering whether the inspections were reasonable and appropriate. Although admittedly Plaintiffs' consumer protection allegations are thin, we find that they are nonetheless sufficient at this early stage to proceed to discovery.
Turning now to Plaintiffs' claims under the FCEUA, we note that Plaintiffs plead a separate count for violating the FCEUA (Count IV) but also allege a violation of the FCEUA in support of its claim under the UTPCPL. At the outset, the separate count for the FCEUA must be dismissed because the FCEUA "does not provide its own private cause of action; rather, it is enforced through the remedial provision of the UTPCPL." Kaymark v. Bank of America, N.A. , 783 F.3d 168, 182 (3d Cir. 2015), abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP , --- U.S. ----, 139 S.Ct. 1029, 203 L.Ed.2d 390 (2019). We do not, however, preclude Plaintiffs from alleging an FCEUA violation as an additional ground under Plaintiffs' UTPCPL claim. Defendant argues that Plaintiffs' FCEUA allegations fail because the fees were expressly authorized by the mortgage agreement. However, the central matter to be resolved by the finder of fact is whether the property inspection fees needed to be reasonable and appropriate. To the extent *471 that they did, and assuming that Defendant's automatic inspection practice is found to have been unreasonable, then those fees were not expressly authorized under the circumstances. Therefore, we will not preclude Plaintiffs from pursing their FCEUA allegations as support for their UTPCPL claim in Count III.
e. Unjust Enrichment Claim Fails Because Conduct is Subject to an Express Contract
Finally, Defendant argues that Plaintiffs' claim for unjust enrichment must fail because the conduct at issue is the subject of an express contract. "[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.' " Wilson Area Sch. Dist. v. Skepton , 586 Pa. 513, 895 A.2d 1250, 1254 (2006) (quoting Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co. , 353 Pa. 185, 44 A.2d 571, 574 (1945) ). Plaintiffs argue that they are permitted to plead in the alternative. We agree with Plaintiffs. Although Plaintiffs may not recover under both breach of contract and unjust enrichment, that is not a prohibition against pleading both theories in the alternative. In Lugo v. Farmer's Pride, Inc. , 967 A.2d 963 (Pa. Super. Ct. 2009), the Pennsylvania Superior Court explained that "theories of breach of contract and unjust enrichment must be pleaded alternatively in order to allow recovery under the latter theory where an express contract cannot be proven." Lugo , 967 A.2d at 970 (emphasis in the original). "If a plaintiff fails to prove a cause of action on an express contract, he may not then attempt to prove his case in quasi-contract, unless his complaint originally ... sets forth a cause of action in quasi-contract." Id. (quoting Birchwood Lakes Cmty. Ass'n, Inc. v. Comis , 296 Pa.Super. 77, 442 A.2d 304, 308-309 (1982) ). Plaintiffs, therefore, may plead unjust enrichment in the alternative.
III. CONCLUSION
For the reasons stated above, we will grant Defendant's Motion to Dismiss as to Count IV. We will deny Defendant's Motion to Dismiss in all other respects. NOW, THEREFORE, IT IS HEREBY ORDERED THAT:
1. Defendant's Motion to Dismiss Plaintiffs' Complaint, (Doc. 21), with respect to Count IV is GRANTED .
2. Defendant's Motion to Dismiss Plaintiffs' Complaint, (Doc. 21), in all other respects is DENIED .

Plaintiffs do not cite to any specific provisions of the non-Pennsylvania consumer protection statutes in Count II that they allege Defendant violated. Furthermore, although the Complaint includes this language from § 201-2(4)(xxi), Plaintiffs do not cite the section in the Complaint, only in their brief.